Southerin, et al.
*v.*
Mendum.

</div>

## WILLIAM RUNLETT *versus* JOHN BELL.

If a sheriff deliver goods, which he has attached by virtue of mesne process, to persons, who are apparently in good circumstances, for safe keeping, he will not be liable, if the goods are lost, through the eventual insolvency of the persons to whom they may have been delivered.

And when the creditor, in such a case, adopts the act of the sheriff by bringing a suit in the sheriff's name, against the bailees, he thereby precludes himself from disputing the sufficiency of the bailees.

Where a sheriff, without any good reason neglects to return an execution, the law presumes such neglect of duty to be a damage to the creditor, and he is, in all cases, entitled to nominal damages at least.

THIS was an action on the case against the defendant, late the sheriff of this county, for the neglect of Joseph Akerman, one of his deputies, to serve and return an execution obtained by the plaintiff against one Jonathan Wiggin.

The cause was tried here, at January term, 1830, upon the general issue, and a verdict taken for the defendant, subject to the opinion of the court upon the following case.

On the 20th May, 1825, the plaintiff sued out a writ of attachment from the office of the clerk of this court

against J. Wiggin, and delivered the same to J. Akerman, then a deputy of the defendant, the sheriff of this county, and Akerman, on the same day, attached sundry articles of personal property, by virtue of the writ, and delivered the property, so attached, to Sherburne and Blunt, for safe keeping, and took their promise, in writing, to redeliver the same on demand.

The plaintiff recovered judgment against Wiggin, at February term, 1826, for $121,08 debt, and $18,47 costs of suit.

On the 2d March, 1826, execution issued against Wiggin, and on the same day was delivered to said Akerman, who has never returned the same to the office of the clerk.

In July, 1826, the plaintiff was advised, that it would be more advantageous to him, as Sherburne and Blunt claimed to own the property attached as aforesaid, to institute a suit, in Akerman's name, for the property, against Sherburne and Blunt, than to compel Akerman to account for the property. The plaintiff's attorney accordingly applied to Akerman for the said promise in writing, and Akerman delivered the same to the attorney, who commenced a suit upon it against S. and B. which suit was conducted under the direction and at the expense of the plaintiff.

When Akerman delivered the property to S. and B. and when he delivered their said promise in writing to the plaintiff's attorney, they were in good credit, but became insolvent before judgment was obtained against them. But the suit against them was protracted by the negligence of the plaintiff to procure papers which were necessary to try it.

An execution was obtained against S. and B. and delivered to Akerman, but nothing has been collected upon it. Akerman brought into court the execution of Runlett against Wiggin, with his return thereon.

*Cutter, Odell* and *Bartlett*, for the plaintiff.

*Mason*, for the defendant.

*By the court.* The aggrievances stated in the declaration in this case are, that the deputy of the defendant, to whom the plaintiff's execution was delivered, neither executed, nor returned it, according to law.

It appears that goods had been attached by virtue of the original writ, by the officer to whom the execution was delivered; and yet he neglected to sell the goods so attached upon the execution. In answer to this ground of action, the defendant says, in the first place, that the officer who seized the goods, delivered them for safe keeping to persons in good credit, and apparently in good circumstances, but who afterwards became insolvent, and so the goods have been lost without his fault; and in the next place, that the plaintiff, having received from the officer who made the attachment, the promise in writing of the persons to whom the goods were so delivered, and having commenced a suit upon that promise in the name of the officer, has waived all claim to call upon the defendant for the said goods. The question is, whether these grounds of defence, or either of them, is a good answer to the action?

To what extent an officer is responsible for goods by him attached upon an original writ, has not been settled in any adjudged case, which has occurred to us. He is, without doubt, to be considered as a bailee, and answerable for the goods, either to the debtor or the creditor, if they be lost by his neglect or fault. 2 N. H. Rep. 87, *Cilley* v. *Jenness*; 6 Johns. 9, *Jenner* v. *Joliffe*; 9 ditto, 381, S. C.

Is he answerable beyond this? We are, on the whole, of opinion, that he is not. As no cases directly in point are to be found, we must resort to the rules which have been applied in analagous cases.

It seems always to have been understood as settled law, that, when a sheriff takes bail in any suit, if the bail so taken, be sufficient, in all appearance, when accept-

Rumlett
*v.*
Bell.

ed as bail, the sheriff will not be liable for their insufficiency in the end, to satisfy the judgment which the creditor may recover. 2 Mass. Rep. 197, and 201 ; 9 ditto, 479, *Long* v. *Billings* ; 11 ditto, 188, *Nye* v. *Smith* ; 13 ditto, 187, *Shackford* v. *Goodwin.*

And if, in replevin, the sheriff take persons as sureties in the replevin bond, who are apparently sufficient, he will not be responsible for their sufficiency, unless he was guilty of negligence in making enquiries as to their circumstances. 3 Starkie's N. P. C. 168, *Scot* v. *Waightman* ; 5 Taunt. 225, *Hindle* v. *Blades.*

There seems to us to be a very close analogy between the cases of taking bail and replevin bonds, and the case of delivering goods, which have been attached, to some person for safe keeping. It is true that when goods are attached, the sheriff may retain them in his own custody, in all cases, if he so choose. But it would often subject him to great inconvenience and trouble so to retain them. In many cases, the interest both of the debtor and the creditor requires that they should be delivered to some person, who will agree to be responsible for them. And it is a common practice so to deliver them ; a practice, which is not only lawful, but in a high degree useful and convenient. 9 Mass. Rep. 537 ; 12 ditto, 168 ; 15 ditto, 14—15.

Indeed, there are cases in which a sheriff, if he should refuse to deliver goods to a friend of the debtor upon an offer of good security, would deserve severe censure.

We are, therefore, induced to hold, that if a sheriff deliver goods, which he has attached, to persons who are apparently in good circumstances, and such as prudent men would have thought it safe to trust, for safe keeping, he is not liable, if the goods be lost through the eventual insolvency of the persons to whom they may have been so delivered.

We are also of opinion that this plaintiff is precluded from disputing the sufficiency of the persons to whom the

Runlett
*v.*
Bell.

goods in this case were delivered, by adopting the act of the officer, and instituting a suit against those persons. The case is very analagous to the case of a plaintiff taking an assignment of a bail bond in England, which clearly precludes him from denying the sufficiency of the bail. 1 Salkeld, 97 ; Mod. Cases, 122 ; 2 C. & P. 100 ; 1 ditto, 154 ; 1 Wilson, 223 ; 2 Bingham, 227 ; 3 B. & P. 564 ; 1 Bingham, 181 ; 2 Mass. Rep. 202.

We are, therefore, of opinion, that no negligence of the defendant's deputy, in relation to the goods attached, is shown, which can constitute a proper foundation for an action.

It then remains to enquire, whether the action can be sustained on the ground, that the execution was not returned ? It does not appear, on the one hand, that the plaintiff has sustained any particular damage by reason of this neglect in the officer, and on the other hand, no reason is shown why the execution should not have been duly returned.

It is said, that in England, regularly, an action does not lie against a sheriff for not returning an execution without other default. Com. Dig. Return, F, 1. In Clerk's case, Cro. Eliz. 873, the question was, whether the sheriff was liable, for neglect to return a *capias utlagatum.* Two of the judges thought he was not liable to an action, but that he should be amerced for the contempt. But one of the judges was of opinion, that although he might be punished for the contempt, yet the party having loss, by the not returning of the writ, might have his action.

But when a plaintiff delivered his writ to the sheriff in full county, according to the provisions of the statute of W. 2, 13 E, 1, cap. 39, an action lay, if the writ were not returned. 2 Inst. 452.

In England, if the execution be not returned at the day, the practice is to obtain a rule upon the sheriff to return the writ, and if he do not return it, the court will grant an attachment. Tidd's Pr. 928.

And in *Moreland* v. *Leigh*, 1 Starkie's N. P. C. 388, Lord Ellenborough was of opinion, that an action upon the case did not lie against a sheriff, who had not been ruled to return the writ, for neglecting to have the money in court according to the exigency of a *fieri facias*.

But it is not the practice in this state, to call upon a sheriff by a rule, in any case, to return process. The only remedy known among us for any negligence of a sheriff in this respect, is an action.

It is not to be doubted that it is, in general, the duty of a sheriff to return all executions which are committed to him to execute. The form of an execution, prescribed by statute, contains a command to the sheriff that he make return of the writ, with his doings, on the return day. 3 Mass. Rep. 251 ; 4 N. H. Rep. 296, *Moody* v. *Mahurin*.

There are, however, exceptions to the general rule. Thus, in the first place, it seems, that when a sheriff has collected the debt and costs, and paid them over to the plaintiff, the execution need not be returned. 5 Coke, 90, Hoe's case ; 1 Salkeld, 318, *Voiart* v. *Vyner* ; 14 East, 568, *Shackford* v. *Austen*.

In the next place, if the officer deliver the writ with his return to the plaintiff, or his attorney, instead of returning it to the proper place, as the custom is among us, it is supposed, that in such a case, the sheriff is not liable to the plaintiff for any neglect to return it to the court.

So when a sheriff has begun to execute process before the return day, and has not been able to complete the execution at the return day, he may lawfully retain the execution for the purpose of completing the business, and shall not be liable, because it is not returned at the day. 6 Mass. Rep. 20, *Prescott* v. *Wright* ; 1 B. & A. 230, *Doe* v. *Donston*.

It is perfectly well settled, that any person who has sustained any special damage by reason of the neglect of a sheriff to return his execution, may sustain an action

to recover the damages thus sustained. 5 Pick. 170, *McGregor* v. *Brown*.

But the question is, whether an action can be sustained simply on the fact that the execution has not been returned, without showing any particular damage ? We were at first inclined to answer this question in the negative ; but upon a more attentive consideration of the question, we are satisfied that an action may be sustained in such a case. The true rule is, that where a sheriff, without any good reason, neglects to do what it is his duty to do, the law will presume it to be a damage to him who had a right to have the duty performed, and an action may be maintained without showing any special damage.

Thus, in the case of *Barker* v. *Green*, 2 Bingham, 317, the action was case against the sheriff for not arresting J. W., against whom a writ had issued, and it appeared that the plaintiff had sustained no damage ; but the court said, that if there was a breach of duty, the law would presume some damage.

And in the case of *Waterhouse* v. *Waite*, 11 Mass. Rep. 207, the court seem to have been opinion that an action might be maintained for not returning an execution, although no special damages were shown.

We are, therefore, of opinion, that the verdict in this case must be set aside, and a new trial granted ; but unless the plaintiff can show some special damage he has sustained, he will be entitled only to nominal damages.

*Verdict set aside, and a new trial granted.*