## BARRON *vs.* COBLEIGH & a.

The bailee of goods attached by a deputy sheriff, who gives a receipt therefor, promising to re-deliver them to the sheriff on demand, and who afterwards converts them to his own use, it not estopped by such receipt from showing, in an

action of trespass brought against him by the debtor, that the goods were his own property.

An officer who attaches goods by virtue of a writ, and deposits them with a bailee for safe keeping, who converts them to his own use, without the knowledge or assent of the officer, is not liable as a joint trespasser with such bailee in an action of trespass brought by the owner of the goods.

The possession of a chattel is sufficient to enable the plaintiff to maintain an action of trespass against a mere wrong doer.

A land surveyor testified that he had run out the lines of lots surveyed by a former surveyor, and was familiar with his mode of marking corners, and the witness then testified to certain marks upon certain alleged corners as having been made by the former surveyor.

*Held*, that his belief that the marks were those made by the former surveyor, was not evidence to be received by the jury as the opinion of an expert, but was merely the testimony of a witness to a fact within his knowledge, and was to be credited by the jury only so far as they believed him able, from his personal knowledge, to identify the marks in question.

Where A. mingles and confuses his property with that of B., so that the separate property of each cannot be distinguished, whether B. thereby becomes entitled to the whole, or whether there be not a distinction between the fraudulent and the innocent confusion of goods, so that in the latter case B. would not be entitled to the whole, *quere?*

TRESPASS, for taking and carrying away forty-eight white pine and twenty Norway pine logs.

The defendants severally pleaded the general issue, and jointly filed a brief statement, setting forth that Cobleigh, on the 24th of Dec., A. D. 1838, sued out a writ against the plaintiff, and caused thirty-six logs to be attached by the other defendant, Morrison—that Morrison, after thus attaching the logs, delivered them to Cobleigh for safe keeping, and took his receipt therefor ; and that Cobleigh, finding that the logs were all cut upon his own lot, No. 2, in the 15th range of lots west of the river Amonoosuck, converted them to his own use.

The parties agreed that on the 24th day of December, 1838, the plaintiff was in possession of thirty-six mill logs, lying together in Daniel Richardson's lot, which he had cut in the 15th range of lots, west of the Amonoosuck, either on lots numbered two and three in said range, or on lot numbered three, as the line between them might prove to be—

Barron *v.* Cobleigh.

that the timber was of the value of $45.00—that Cobleigh owned lot No. 2—that the plaintiff cut the logs after the 5th day of December, 1838, and cut up to the line, claiming one half the line trees—that on said 24th day of December, 1838, Cobleigh sued out a writ against the plaintiff, and delivered it to Morrison, a deputy sheriff, who attached all the timber where it was lying, and delivered it to Cobleigh for safe keeping, taking his receipt therefor; and that Cobleigh afterwards, claiming the timber as his own property, and alleging that it was cut on his lot No. 2, converted it all to his own use, without the leave of Morrison. The logs had no marks upon them by which they could be distinguished.

Lot No. 2 lies eastwardly of, and adjoining lot No. 3, and one Hamlin Rand, on the 5th day of December, A. D. 1834, sold to William Eastman all the timber on the west end of lot No. 3, and so much of it as extended one hundred rods from the west end thereof, and up to the west line of the lot, provided the timber should be taken off in four years from said 5th day of December. Eastman took off the greater part of the timber, and in the latter part of November, 1838, sold to the plaintiff all his interest in the timber then remaining upon the land.

The defendants contended that upon these facts, Morrison was not liable in any event; but the court instructed the jury that Morrison was liable equally with Cobleigh.

They also contended, that as the different logs composing the lot of timber had no distinguishing marks by which it could be ascertained what logs were cut upon lot No. 2, if any, and what were cut upon lot No. 3, if the jury should believe that some of them were cut upon the defendant's lot No. 2, Cobleigh might lawfully take all the timber, as the plaintiff had left him no means of ascertaining the particular logs which belonged to him. The court instructed the jury that if Cobleigh took any logs belonging to the plaintiff, and converted them, he was liable to the plaintiff therefor, although there were no marks upon them.

They also contended that as the timber was cut by the plaintiff after the 5th day of December, 1838, the defendants, if liable at all, were so to the heirs of Hamlin Rand, who is deceased, and not to the plaintiff; but the court ruled that if the logs were not cut upon the land of Cobleigh, the defendants were answerable therefor to the plaintiff.

It appeared that the lots were originally surveyed about fifty years since, by one Snow, a surveyor; and the defendants offered one John McDuffie as a witness, and he testified that he had for many years been a surveyor; that he had often run out the lines of the lots surveyed by Snow, and was familiar with his mode of marking corners; and he then testified to certain marks upon certain alleged corners as being marks made by Snow.

The counsel for the defendants, in arguing the case to the jury, alluded to the *opinion* of McDuffie, and the counsel for the plaintiff moved the court to instruct the jury that the *opinions* merely of McDuffie were not evidence. The court instructed the jury that the *opinions* of McDuffie, as to the true lines and corners of the lot, were not evidence, unless the jury believed the facts testified to by McDuffie, as to the marks used by Snow, and as to the marks on the alleged corners being made by Snow.

The court further instructed the jury, that the plaintiff was entitled to recover the value of so much of the timber as was not cut on the land of Cobleigh; and they returned a verdict for the plaintiff, for the whole amount claimed by him.

The defendants moved to set aside the verdict, and for a new trial, on account of the ruling and instructions of the court as aforesaid.

*Livermore*, for the plaintiff.

*Goodall*, for the defendants.

Barron *v.* Cobleigh.

GILCHRIST, J.* One of the questions made at the trial, as appears from the statement of the case, was as to the dividing line between lot No. 2 and lot No. 3. It was necessary to settle this, in order to determine on which of the lots the timber was cut by the plaintiff. If on the latter, the defendant had no right to take it away. If on the former, as it came from his own land, he might assert his right to it. The jury were instructed that the plaintiff was entitled to recover the value of so much of the timber as was not cut upon the land of the defendant, and they returned a verdict for the whole amount claimed by the plaintiff. It is settled, therefore, by the verdict, that none of the timber was cut upon the land of the defendant. On this account it is unnecessary to inquire into the correctness of the instruction of the court, as to the confusion of the property. It may be a question whether the general instruction of the court should not have been somewhat qualified on this point, and whether a distinction should not have been made, between the fraudulent and the innocent intermingling of the timber from the different lots, if the jury should believe that some of it was cut upon the land of the defendant. There was no evidence that there was any fraudulent intent on the part of the plaintiff, and perhaps no distinction would have been necessary to be made. Upon this point we give no opinion. The cases upon this question are collected in *Ryder* vs. *Hathaway*, 21 *Pick.* 298, and Mr. Justice Morton remarks, that "few subjects in the law are less familiar or more obscure than that which relates to the confusion of property."

It has been contended, by the counsel for the plaintiff, that Cobleigh, by causing the logs to be attached as the property of the plaintiff, and by giving a receipt for them to the officer as such property, is now estopped from showing that they belonged to himself. There are undoubtedly some cases in which such a contract as Cobleigh has made estops the party from proving a different state of facts from that re-

---

* WOODS, J., having been of counsel, did not sit.

cognized by the contract. This arises from the peculiar relation in which the attaching officer stands to both parties to the suit, and from the uncertainty, during the pendency of the suit, to which of them he will be eventually responsible for the property. If the plaintiff recover, the duty of the officer is to levy the execution upon the property, and pay the proceeds of the sale to the plaintiff. If the defendant recover, he, as the owner, is entitled to a return of the property. While, therefore, the suit is pending, and the property is in the possession of the bailee, he cannot set up as a defence to a suit by the officer on the contract, that the goods attached are not the property of the debtor. Whether they are, or are not, is not for him to inquire. He owes a duty only to the party with whom he has contracted. It is not his duty, but the officer's, to return the property to the owner, and the officer should have possession of it, that he may discharge that duty. But where the property does not belong to the debtor, and has been delivered to the true owner, it has been held that this latter fact constitutes a good defence to an action upon the contract.

Thus, in the case of *Fisher* vs. *Bartlett & al.*, 8 *Greenl.* 122, it is held, that property in a third person is no defence to a suit by the officer upon the contract. It is said by Mellen, C. J., that "the officer must obtain possession, in order to return the property to such third person, he being the true owner. But if such third person has obtained possession of the property, or has appropriated it to his own use and benefit, there seems to be no sound reason why the receipter, in such case, should not be permitted to defend himself, by proving these facts. Why should the officer recover? He cannot be answerable to any one in damages. Should the attaching creditor, having recovered judgment, sue the officer for neglect in not satisfying the execution out of the property attached, he might effectually defend himself by proving that it did not belong to the debtor. This has been distinctly settled in *Fuller* vs. *Holden*, 4 *Mass.* 498, and *Taylor* vs.

*Ulmer*, 12 *Mass.* 163. If the defendant, having obtained judgment, should sue the officer for the non-return of his property, the same facts would constitute a good defence for him in such action. And if the true owner should call on him for it, he might defend himself by proving that such true owner had already the property in his possession, or had availed himself of its proceeds, or in some way appropriated it to his own benefit."

In the case of *Learned, Adm'x*, vs. *Bryant & a.*, 13 *Mass.* 224, it appeared that the property attached, and delivered to the defendants, did not belong to the debtor, but to one Benjamin Sawtell, and upon the demand of his administrator, it had been delivered by the defendants to him, and applied to the payment of the debts of the intestate. It is said by the court that "the defendants were not bound by their receipt, at all events, to retain the goods. They were certainly not bound to hold them against the demand of him who had the right." And as the property belonged to Sawtell, and went to pay his debts, it was held that the plaintiff had disclosed no cause of action. *Webster* vs. *Harper*, 7 *N. H. Rep.* 595 ; *Lathrop* vs. *Cook*, 14 *Maine* 414.

It appears somewhat difficult to reconcile with these decisions, the case of *Bursley* vs. *Hamilton*, 15 *Pick.* 40. There the defendant gave a receipt for articles attached, and promised to re-deliver them on demand. In an action upon the contract, it was proved that the property attached belonged to the defendants, and not to the debtor; but it was said by Shaw, C. J., that "in an action to enforce the promise, he is precluded from alleging property in himself by way of defence." It is difficult to perceive why the reasoning of the court in *Fisher* vs. *Bartlett*, 8 *Greenl.* 122, is not applicable in this case. The officer is not liable to the attaching creditor, if he show the property to belong to the defendant. Nor is he liable to the defendant, if he, as the rightful owner, have the possession of the property. As he is in no event answerable, the reason for compelling a return

of the property seems not to exist. But instead of permitting this defence, the court held, that he should comply with his contract, and deliver the property, and then bring his action against the officer, in which case, it is held, on the authority of *Jones* vs. *Church*, 12 *Pick.* 557, that the admission contained in the receipt, would not estop him from denying that the goods were the property of the debtor.

But even if the case of *Bursley* vs. *Hamilton* be law, it does not apply to this case. This is not a suit brought to enforce the contract, and the question is not whether the defendant shall fulfil his contract with the other contracting party. Any admission contained in the contract, is, as to any person but the sheriff, "*res inter alios acta.*" The creditor, even, has no control over such an agreement, but it is a contract made by the sheriff for his own private security. *Phillips & a.* vs. *Bridge*, 11 *Mass.* 247 ; *Clark* vs. *Clough*, 3 *Greenl.* 316. The remedy of the creditor is against the sheriff, and under whatever obligation the sheriff may be to the debtor to take a sufficient receipt when tendered, the creditor has no right to complain, if he does not take such receipt. The plaintiff has not acted upon any admission contained in the receipt, nor has it in any way injured him. A receipt of this character, if conclusive upon the party giving it, operates as an estoppel *in pais.* It is so essential to the transaction of business, that men should be able to put faith in the conduct and representations of each other, that courts have held such conduct and representations binding in cases where injustice would be caused, unless they were held conclusive. "The rule of law is clear," said Lord Denman, in delivering the judgment of the court in *Pickard* vs. *Sears*, 6 *Ad. & E.* 475, "that where one, by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act upon that belief, so as to alter his own previous position, the former is precluded from averring against the latter a different state of things as existing at the same time."

But mere formal statements and admissions, which, perhaps, were deemed unimportant at the time, and by which no one has been deceived, or induced to alter his position, are not conclusive. An admission *in pais* has no technical force. It does not derive its validity from the mere fact that it has been made. It is subject to explanation, and to be controlled by the circumstances connected with it. It does not possess that intrinsic weight given by law to a deed which the grantor is not allowed to dispute. *Goodtitle* vs. *Bailey, Cowp.* 601; *Bowman* vs. *Taylor,* 2 *Ad. & E.* 278.

Thus in the case of *Loomis* vs. *Green,* 7 *Greenl.* 386, the Trustees of Dartmouth College had brought an action of trespass, *qu. cl. fr.* against the plaintiff, and attached certain logs as his property, for which the agent of the trustees gave his receipt. The trustees afterwards sold them, and Loomis brought an action of trover against the defendant, the vendee, who defended under the trustees' title. The plaintiff contended that the trustees, having attached them as his, were now estopped to deny his title. But it was said by the court, that the principles of estoppel have never been carried to this extent, and the policy of the law does not require it. " There would seem to be no reason why the creditor should be estopped that would not operate with equal force against the officer making the attachment. They both may have been under a mistake. Any intermediate attachment of it, as the property of the trespasser, would be operative no farther than as an admission by the plaintiff founded upon erroneous information, and, of course, not binding."

We are, therefore, of opinion that the admission in the receipt does not conclude Cobleigh from showing that the logs belonged to him ; and we have examined this question, because it is argued, that as Cobleigh is estopped by the receipt, it is unnecessary to inquire into the other questions raised by him on the trial.

One of those questions is, whether, as the logs were cut by the plaintiff, after the 5th day of December, 1838, and

after the expiration of the time within which, by his contract with Hamlin Rand, the plaintiff had a right to cut timber, the defendants are not answerable to Rand, or his representative, and not to the plaintiff. But Cobleigh is a mere wrong doer. The logs came into his possession from the officer under the attachment, and, without having obtained a judgment, he has converted them to his own use. The logs were taken from the possession of the plaintiff; and whether he be answerable or not to the owner of the land, is not a matter into which Cobleigh has a right to enquire. It is well settled, that if a party have the actual possession, his title, as against a mere wrong doer, is immaterial. *Hoyt* vs. *Gelston*, 13 *Johns.* 141.

The defendant excepts to the instruction of the court, in relation to the testimony of McDuffie. If he had been called to give his opinion, as an expert, whether the marks upon the corners, about which he testified, were ancient marks, he would be admissible for that purpose upon the authority of *Davis* vs. *Mason*, 4 *Pick.* 156, in which such testimony was admitted; and also upon the same principle which authorizes the admission of the opinion of seal engravers, as in *Folkes* vs. *Chadd*, 3 *Dougl.* 157, where it is intimated by Lord Mansfield to be admissible; and of an engineer, as to the effect of an embankment, which in the same case is held to be competent evidence. But McDuffie was not called for any such purpose. He testified that he had often run out the lines of the lots surveyed by Snow, and was familiar with his mode of marking corners; and from this knowledge he testified that certain marks were made by Snow. The counsel for the defendant apparently inferred from this evidence, that he had given his opinion that the marks were ancient marks, or that his opinion was competent evidence, independent of his personal acquaintance with the marks made by Snow. His belief was founded upon his personal knowledge. If he were mistaken, as to the marks being those made by Snow, the

foundation fails upon which his testimony rests ; and if the jury did not believe that these marks were made by Snow, his opinion, as it was not founded upon his general knowledge of surveying, but upon his particular knowledge of Snow's marks, is not evidence. This is, in truth, not the opinion of an expert, but the knowledge of a witness, as to facts ; and as such, the instruction of the court is merely to the effect, that if they did not believe the witness was sufficiently acquainted with Snow's marks to identify them, they were not to receive his belief as to the marks, as evidence. We think, therefore, that the instruction of the court was correct.

There is no ground for holding Morrison liable as a trespasser. His process authorized him to seize the logs, and there is no objection to his act in depositing them with the plaintiff. The conversion of the property was without his knowledge or assent, nor was he in any manner privy to it. The relation in which he stood to the bailee of the property does not make him liable for the tortious acts of the bailee, committed without his privity. If the logs had been lost through the insolvency of the plaintiff, he would not have been liable, if the plaintiff had been in good circumstances at the time of the bailment. *Rundlet* vs. *Bell,* 5 *N. H. Rep.* 433. And it is said in that case, that the officer is not liable for the goods, unless they are lost by his neglect or fault.

We think there is no ground for holding him liable as a trespasser, and he must, therefore, be discharged with costs.

*Judgment on the verdict.*