## COBURN v. COXETER.

Monuments must control courses and distances, even if it cause a wide departure from them.

If in any case the course and distance can be allowed to control the monuments, it can only be when from the terms of the deed the intention that they should control is manifested so strongly as to indicate a mistake in the description of the monument.

Where the termination of one line is indicated only by the course named in the deed, but the termination of the next line is an ascertained monument at a given distance and course from the termination of the preceding line, the precise location of the latter may be determined by reversing the course of the succeeding line, and measuring back the distance called for.

A conveyance of a strip of land itself, in explicit terms, with a restriction that it shall be used only for a road, is nevertheless a grant of the fee, and not of a mere easement.

TRESPASS, *quare clausum*, by Wm. P. Coburn against James E. Coxeter. Writ dated Feb. 17, 1869. The defendant pleaded the general issue ; and also pleaded specially a right of way over a strip of land one and a half rods in width, immediately north of the defendant's lot.

It appeared that the land immediately north of the alleged way belongs to the plaintiff. It also appeared that one Thayer, prior to Nov. 9, 1857, owned the strip over which the way was claimed. The plaintiff introduced a quit-claim deed of said strip from Thayer to Silas Fuller, dated Nov. 29, 1867, and a quit-claim deed of the same from Fuller to the plaintiff, dated Jan. 23, 1869.

It appeared that Thayer, prior to Nov. 9, 1857, owned the lot now owned by the plaintiff, and another lot partly bounded on the west by the plaintiff's and the defendant's lots. The plaintiff introduced a warranty deed from Thayer to Mansfield, dated Nov. 9, 1857. This deed conveyed two tracts : the first was a lot bounded partly on the west by the plaintiff's and the defendant's lots ; the second was described as follows : "Also one other piece of land, beginning at the south-west corner of the above described lot of land, thence north 18 degs. east, one and a half rods, to a stake and stones ; thence north 8¾ degs. east, about twenty rods, to the river road ; thence south 18 degs. west, on the line of said road, one and a half rods to a stake and stones ; thence south 8¾ degs. west, about twenty rods, to the first mentioned bounds,—containing thirty rods of land, which is to be used for a road and for no other purpose whatever." It was conceded that the second course in this description ("north 8¾ east") is repugnant to the remainder of the description, not running in the direction of the river road. The description does not, however, cover the way claimed by the defendant, even if this second course is rejected.

Subject to the plaintiff's exception, Mansfield was allowed to testify
that on Nov. 9, 1857, about half an hour before the deed was made,
from Thayer to him, he went on the land with Thayer and a surveyor
to run out the strip of a rod and a half in width ; that, instead of be-
ginning at the south-west corner of the lot first described in that deed,
they began at a point in the westerly line of said first described lot,
about two rods northerly of said south-west corner (there being a stake
and stones at that point) ; that they then ran northerly on said line
one rod and a half, and then made a corner with a stake and stones ;
that thence they ran westerly to the river road, where they either
found or made a corner ; thence south on the line of that road one and
a half rods, to the northerly line of lot now owned by the defendant,
where he thought they found a stake and stones ; thence easterly on
the line of the defendant's land, to the first mentioned bound,—so as to
make the tract run out one and a half rods in width.    Mansfield's evi-
dence tended to show that this running, &c., was for the purpose of
determining the boundaries and location of the second tract conveyed
by Thayer's deed of that day.    The strip thus run out and marked was
the same over which the defendant claims a right of way.

The defendant offered to prove that Mansfield, Thayer, Fuller, and
all other adjoining owners used this strip thus run out by Mansfield
and Thayer as the way conveyed to Mansfield, and that no one ever
claimed any other way to be the way so conveyed, until this controversy
arose a few months prior to the present suit.

The plaintiff purchased his lot, except this strip, of Fuller, April 12,
1866.    The plaintiff testified that when he made that purchase he
understood that a rod and a half on the southerly side had been re-
served for a road.    The lot conveyed by Fuller to the plaintiff, April
12, 1866, was purchased by Fuller of Thayer, March 30, 1864.    The
deed from Thayer to Fuller contained the following reservation : "Re-
serving a strip one rod wide on the southerly side of said piece, deeded
by me to Charles Mansfield."

It was ruled in substance, that the evidence introduced and offered
did not tend to show the existence of a right of way in the place claim-
ed by the defendant ; and a verdict was directed for the plaintiff.    The
defendant excepted, and moved to set aside the verdict.    All deeds
and plans used on the trial are made part of this statement.

The case was reserved.

*Lane & Healey*, for the plaintiff.

In the construction of deeds, monuments control courses and dis-
tances.    *Peaslee* v. *Gee*, 19 N. H. 272.    Boundary lines are monu-
ments—*Breck* v. *Young*, 11 N. H. 485 ; *Enfield* v. *Day*, 11 N. H. 520 ;—
so are highways.    *Rix* v. *Johnson*, 5 N. H. 524 ; *Reed's Petition*, 13
N. H. 384.

Where land is found answering the general description of the deed,
but not all the particulars, such particulars may be rejected and the

deed take effect by the general description. *Lane* v. *Thompson*, 43 N.
H. 324 ; 1 Greenl. Ev. 301.    ·

On a question of boundary, where all the facts are proved connected
with the transaction, the first point to be settled is, What facts answer
the call of the deed? what facts fulfil the description of the premises?
And if this is apparent, no evidence can be introduced to show that
the parties meant anything else. But if it appears that two or more
bounds answer the requirements of the deed equally well, this presents
a latent ambiguity, and parol evidence may be introduced to show
which of the different bounds the parties meant, and it cannot be in-
troduced for any other purpose. *Peaslee* v. *Gee*, 19 N. H. 278 ; *San-
born* v. *Clough*, 40 N. H. 325 ; 1 Greenl. Ev. 301.

In the present case, the location of the first corner called for in the
deed is not a matter of dispute or uncertainty, and parol evidence can-
not, therefore, be introduced to locate it anywhere else. *Wells* v.
*Jackson Iron Co.*, 47 N. H. 262.

No practical location occurred in this case, as it could not take
place until after the deed was made. *Wells* v. *Jackson Iron Co.*, 47
N. H. 252.    ·

By observing the foregoing rules, we think that a location of prem-
ises may be made from the deed, though not to include any part of the
disputed premises ; otherwise, the deed must be void for uncertainty.


*Wheeler & Faulkner*, for the defendant.


1. There being a latent ambiguity in the deed from Thayer to Mans-
field, parol evidence in explanation was competent. *Hall* v. *Davis*,
36 N. H. 569 ; *Clough* v. *Bowman*, 15 N. H. 504.

The deed called for two monuments : a stake and stones at the end
of the first course, and a stake and stones at the end of the third
course. The identity of these monuments could be proved in no way
except by parol testimony ; and the evidence of Mansfield, to show
where these monuments were placed, was competent. *Claremont* v.
*Carlton*, 2 N. H. 373.

2. The language of the deed being ambiguous, the evidence offered
tended to show a long acquiescence by the parties and all other adjoin-
ing owners in the particular construction claimed by the defendant,
and was therefore competent. *Newmarket Manufacturing Co.* v. *Pen-
dergast*, 24 N. H. 54 ; *Stone* v. *Clark*, 1 Met. 378 ; *Choate* v. *Burnham*,
7 Pick. 274 ; *Jackson* v. *Ogden*, 7 Johns. 238. In these cases evidence
was received of practical location of the lands, and long acquiescence.

3. It has not yet been decided that a practical location may not be
made before the execution of the deed ; in fact, the inference to be de-
rived from decided cases is, that it may. *Prescott* v. *Hawkins*, 12 N. H.
19. In the cases in which the question has arisen, no monuments
were previously established or agreed upon by the parties ; and the

attempt has been to show that the line described in the deed by cours-
es and distances, or otherwise than by reference to monuments, differed
from that actually run or agreed upon by the parties.     *Wells* v. *Com-
pany*, 47 N. H. 235.

The offer here was, to show—the descriptions in the deed being in-
consistent—that the parties practically located the line by erecting
monuments which were afterwards referred to in the deed.

BELLOWS, C. J.   The plaintiff claims title to the land in question
under a quit-claim deed from Fuller, of January 23, 1869, and Fuller
derived his title from Thayer, by deed of November 29, 1867, and it
appeared that prior to Nov. 9, 1857, Thayer owned the land ; and
the question is, whether, on that day, he conveyed it to one Mansfield.

On that day he did convey to Mansfield two tracts of land, both of
which were described : the second one, as beginning at the south-west
corner of the lot before described, and running north 18 degrees east,
one rod and a half, to a stake and stones ; thence north $8\frac{1}{2}$ degrees
east, about twenty rods, to the river road ; thence south 18 degrees
west, on the line of the road one rod and a half, to a stake and
stones ; thence south $8\frac{3}{4}$ degrees west, about twenty rods, to the first
mentioned bounds,—containing thirty rods of land, to be used for a
road and for no other purpose whatever.

This description does not cover the land in question ; but the defend-
ant offers parol evidence of a survey made by Thayer and himself,
about half an hour before the deed was made, of the strip of land in
question, for the purpose of determining its boundaries ; that, instead
of beginning at the south-west corner of the lot first described, they
began at a point about two rods northerly of that corner, at a stake
and stones ; that they ran wholly around this strip of land, and either
found or made corners, and the courses of both the northerly and
southerly lines varied materially from those given in the deed.

The proof is that the place of beginning was not the south-west
corner of the first described lot, but a stake and stones about two rods
northerly of it ; and the inquiry is, whether such proof is admissible.
Beginning at this south-west corner, it is clear that, in no view that can
be taken of the description, is the land in question included, and it is
equally clear that there is no ambiguity in the description of this
boundary, latent or otherwise.

On the contrary, the boundary is perfectly well defined, and no other
is shown that would answer equally well the description in the deed.
If there had been an ambiguity raised by parol evidence, it might
be removed by the same evidence by showing which of the two monu-
ments was intended ; but to allow this description to be controlled by
parol evidence would be totally subversive of well established princi-
ples, and would find no countenance in the adjudged cases.

The stake and stones, about two rods northerly of this south-west
corner, could in no sense answer the call in the deed ; and the effect of
the admission of that evidence would be, not to apply the description

in the deed to the land, but to show that description to be wrong, and that a wholly different tract was in fact conveyed.

If this evidence be admissible to control the deed in this case, it would be difficult to conceive of a case where it would not be admissible, for here, clearly, there is no latent ambiguity in respect to this boundary. The most that can be said is, that the parol evidence shows that the parties intended to convey a different tract of land; but if it be so, the only remedy is by proceedings in equity to reform the deed, for at law it is conclusively presumed that all previous negotiations are merged in the deed.

The case of *Sanborn* v. *Clough*, 40 N. H. 316, is strongly in point. There a committee of partition in their report set off a tract of land to one of the parties, describing the easterly line as terminating on the north at the south-east corner of the fourth division, lot number seventy, and then westerly on the line of that lot number seventy a certain distance.

The defendant offered evidence that the committee in making partition ran a line farther south than the line of lot number seventy, and established it as the north line of the lot in question; but the court held the evidence to be inadmissible, as tending to contradict the terms of the report.

So, in *Wells* v. *Jackson Iron Mng. Co.*, 47 N. H. 253 and 262, it was decided that where the starting-point in a deed was the north-east corner of Dorcas Eastman's grant, it could not be shown in an action at law that the word " *north-east* " was inserted in the deed by mistake for " north-west "—and see the numerous cases cited on that point. To the same effect is *Prescott* v. *Hawkins*, 12 N. H. 19.

The starting-point, then, must be regarded as fixed by the deed at the south-west corner of another lot described; and as to where that is there is no controversy.

From this point the deed calls for a line north 18 degrees east, one rod and a half, to a stake and stones; but there is no evidence that there was such stake and stones at that distance. The evidence of the defendant, however, tends to prove that at the distance of about two rods from this corner there was a stake and stones, and another at the distance of three and a half rods. His evidence also tended to prove that this last mentioned stake and stones was made by the parties as the north-easterly corner of the tract intended to be conveyed, and as the termination of the first line described in the deed.

The question then is, whether parol evidence that such a monument three rods and a half from the place of beginning shall control the distance called for by the deed, that being one rod and a half only.

As to the general principle, that monuments control both courses and distances, there can be no doubt. It is too well established here and elsewhere to need the citation of authorities. What the monument is is determined by the deed, but where it is is a question of fact to be determined by the jury.

If the deed calls for a particular monument, and parol evidence discloses two or more monuments that answer that call, that makes a

case of latent ambiguity, and resort may be had to further parol evidence to prove which monument was intended,—upon the ground that as the ambiguity was created by oral evidence, it may be solved in the same way. The inquiry then is, whether there is in this case anything that will control the general rule that monuments will govern both courses and distances.

On this point the intention is manifest to convey a strip of land only one rod and a half wide for a road. That is shown by the length of line at each end given in the deed, and the quantity of land named therein. So, to reach the most northerly stake and stones, the line must not only be extended about two rods beyond the call in the deed, but it must pass another stake and stones about two rods from the starting-point.

On the other hand, the call is for a stake and stones; and there appears to be none at the end of one rod and a half from the beginning of that line, and therefore there is nothing in the deed to identify and fix as the bound either of these two monuments. The most that can be said is, that one is nearer to the termination of the line as described in the deed than the other. That fact, however, we think, is not controlling as matter of law, but is to be weighed with the other evidence by the jury in determining which was the monument intended.

The deed calls for a stake and stones as a monument, and if that can be identified it must govern : where that monument is must be for the jury to determine. There may be exceptions to the rule that monuments will govern courses and distances,—as where, from the peculiar circumstances of the case and the exactness of the terms used, it is manifest that the intention was to give to the statement of course or distance a controlling force—as in *Davis* v. *Rainsford*, 17 Mass. 207, where one of the lines called for in the deed was in length one foot and three inches, and it was held that this should prevail over the monument, which would make the line three feet and six inches. In reaching this conclusion, the court assume that the rule which gives monuments a preference to course and distance is based upon the idea that there is less liability to mistakes in respect to the former than to the latter, and that in that case it was impossible to suppose that so great a mistake could be made in measuring so short a line.

It will be observed, however, that the monument referred to was not directly called for in the deed as the termination of this line, but the next line was described as running on the line of another's land, which would make the line in question three feet and six inches long, if extended to that land. The construction adopted was also aided by a plan or diagram on the back of the deed, which was inconsistent with such increase of line.

There are other cases which show that the rule that monuments will govern courses and distances is not altogether inflexible. Among them are *Evans* v. *Weeks*, 6 Richardson S. C. 83 ; *Hamilton* v. *Foster*, 45 Maine 32. In this last case, however, the monuments departed so widely from the distances named in the deed, and were so inconsistent with other parts of the description, that they were aban-

doned. There are many cases, indeed, where monuments are rejected upon the ground that they are so inconsistent with other parts of the description as to show that they were inserted by mistake—*falsa demonstratio non nocet.* Among these cases, that of *Davis* v. *Rainsford* is by far the strongest in qualifying the rule that monuments will govern courses and distances; but this, we think, does not go far enough to govern the case before us.

In New Hampshire we find nothing which countenances a departure from this rule, but the adjudged cases fully sustain it.

In *Smith* v. *Dodge*, 2 N. H. 303, two of the lines given in the deed extended beyond the bounds agreed upon, so far as to include another tract of some fifty acres, apparently ; and yet, upon identifying the monuments agreed to, this other tract was excluded, although the length of those two lines was greatly diminished thereby. The court held that it was well settled that the monuments must prevail, whatever mistakes the deed may contain as to the distances between the monuments.

The doctrine that monuments must govern was recognized in *Prop. of Enfield* v. *Day*, 11 N. H. 520, where the course described in the deed varied 10 degrees from that indicated by the monuments, the former being south 58 degrees east, and the latter south 68 degrees east. The same doctrine is recognized in *Bowman* v. *Farmer*, 8 N. H. 402, in *Griffin* v. *Bixby*, 12 N. H. 454, and in *Hall* v. *Davis*, 36 N. H. 569, where it is said that the monuments must govern, however they may differ from those represented on the plan or described in the charter. So is *Colby* v. *Collins*, 41 N. H. 304, and cases cited.

There are many other cases in this State which recognize the rule, and in none of them do we find any qualification of it such as gives the description of the distance the control over monuments. The same rule is recognized in Maine,—as in *Haynes* v. *Young*, 36 Maine 557, where a line described as running north by land of Warren 107 rods, was made to conform to the line of Warren's land, though in so doing the course would be part of the way west.

So, in *Emery* v. *Fowler*, 38 Me. 99, the deed described the land as " exactly one acre and a half," and yet the monuments given included more ; and it was held that the monuments must govern, although the terms used showed an intention to convey one acre and a half only. Those terms were " beginning, &c., thence across said lot to the Rolfe road on such a course as that a line extended across said lot to said road northerly to a point in said road where it is intersected by the head line of said lot, and thence on the head line thereof to the place of beginning, shall contain exactly one acre and a half."

The rule is also recognized in Pennsylvania—*Hunt* v. *McFarland*, 38 Penn. St. 69—which is a strong case in this direction. This is the doctrine of the United States courts, and so held in *Newsom* v. *Pryor's Lessee*, 7 Wheat. 7, where the grant was of land " lying on both sides of the two main forks of Duck river." One line was described as running " south 894 poles to a stake crossing the river," and it was found that if the line was extended so far as to cross the river, the length of

it would be increased to 1,222 poles, and yet the rule was applied—the court holding that it was much more probable that there should be a mistake in the distance, than in the fact of crossing the river ; and the court also held that even if there was no stake at the end of the line, it must still cross the river.

Such is the rule in Massachusetts,—*Pernam* v. *Wead*, 6 Mass. 131,— where PARSONS, C. J., put it upon the ground of the greater certainty of the monuments, owing to the frequent inaccuracies in respect to course and distance ;—so are *Frost* v. *Spaulding*, 19 Pick. 445, and *Howe* v. *Bass*, 2 Mass. 380 ;—so, also, is *Flagg* v. *Thurston*, 13 Pick. 141, where the line in question was described as running on the road fourteen rods and five links to land of the heirs of Peter Thurston,— and to the line of that land was in fact only eight rods and five links. It was held that this line was a monument, and must govern.

In *Holland* v. *Overton*, 4 Yerg. (Tenn.) 482, 1 U. S. Dig. 474, sec. 44,— where the grant called for a stake at a given distance, and it was proved that a white oak, 134 poles beyond the distance called for, was marked as the corner,—it was held that the oak, though not called for in the grant, was the true corner.

The cases on this subject are very numerous, and are collected in 3 Cowen & Hills, Phillipps Evidence 1378–9, and in 1 U. S. Dig., tit. Boundaries, p. 474. The cases cited furnish strong examples of the application of the rule, and give no countenance to a construction which should make the description of distance, in the case before us, control the monument.

On the evidence offered, the jury might find the more northerly stake and stones to be the monument fixed upon by the parties for the end of the first line ; and we think that must control the distance named in the deed.

Should a jury so find, the inquiry would be as to the second line. That is described as running north $8\frac{3}{4}$ degrees east, about 20 rods to the river road; but running that course the line would not strike the river road at all, but would run nearly parallel with it, though slightly divergent. Had the deed called for a monument at the road, which could be identified, the line must have been governed by it upon the principles stated, notwithstanding the great departure from the course given in the deed : but no such monument is called for as the termination of that line. The question then is, whether the place of intersection with the road can in any way be determined. In a case where a boundary of an extensive character, such as a river or swamp, is called for, it has been held that the line must be run to the nearest point in such object. *Campbell* v. *Branch*, 4 Jones Law (N. C.) 313.

In the case before us, although the deed calls for no monument but the river road at the end of the second line, yet at the termination of the third line it does call for a stake and stones at a distance of one rod and a half from the end of the second line, and that stake and stones the evidence tends to identify as the one established by the parties for that corner.

By reversing the course and running back one rod and a half, the place of the termination of the second line is determined, and there, indeed, the evidence tends to show another stake and stones established by the parties as the north-westerly corner of the land conveyed. That a line may be located in this way by reversing the course from an established monument, is shown by sundry adjudged cases. *Safret* v. *Hartman*, 7 Jones (Law) N. C. 199, 21 U. S. Dig. 169, sec. 148; *Dobson* v. *Fenlay*, 8 Jones (Law) N. C. 495; *Wilson* v. *Inloes*, 6 Gill. 121.

If, then, the monument at the termination of the third line is established, the terminus of the second line is readily fixed, that is, by measuring back one rod and a half from the end of the third line.

In this way the deed is made to take effect, and to grant the land which appears to have been intended by the parties. That it should convey twenty rods more than was intended is to be regretted, but the only remedy would seem to be to obtain a reformation of the deed in equity. With these views, we are brought to the conclusion that the conveyance by Thayer to Mansfield embraced the *locus in quo*, and that, consequently, the title of the plaintiff fails unless it can be held that his deed to Mansfield conveyed only an easement and not the fee; in which case, as the defendant shows no title under Mansfield, he would have no right to use the way.

It is not contended, however, that the fee was not conveyed to Mansfield; and we think such a position, in the face of the explicit language of the deed, could not be maintained.

A conveyance of a right of way over that parcel of land would clearly pass only an easement, leaving the fee in the grantor; but here the land itself, in the broadest terms, is granted, and the restriction upon the use is entirely consistent with the passing of the fee.

It is true that the land was to be used for a road, and for no other purpose whatever; but at the same time it is inconceivable that the land should have been granted in explicit terms, when only an easement was intended. In *Chatham* v. *Brainard*, 11 Conn. 90, it was held that a grant of an acre of land for a burying-place was a grant of the soil, and not of a mere easement. So a grant of "all that, and those sea grounds, oyster layings, shores, and fisheries," is a grant of the soil, and not of a mere easement. *Scratton* v. *Brown*, 4 B. & C. 485. So a grant of a *boillourie* of salt, or of all grantor's woods, or all the profits of his lands, conveys the soil. Co. L. 4 *b*.

A grant of a tract of land, on condition that it be forever kept as a public square, was treated as a grant of the entire estate upon condition subsequent, subject to be defeated by failure to comply with the condition. *Stuyvesant* v. *Mayor*, &c., *of New York*, 11 Paige Ch. 414.

So a lease of land for five hundred years for a school-house, was regarded as a lease upon condition that a school-house be maintained. *Castleton* v. *Langdon*, 19 Vt. 217.

Our conclusion is, therefore, that the verdict ordered by the court for the purpose of raising these questions be set aside, and a

*New trial granted.*