[No. 11510.    Department Two. — July 26, 1886.]

## LONG BEACH LAND AND WATER COMPANY, APPELLANT,' *v.* SOLOMON RICHARDSON ET AL., RESPONDENTS.

SEASHORE — OWNER OF ADJOINING LAND TAKES TO HIGH-WATER MARK — PRESUMPTION. — In the absence of evidence to the contrary, it is presumed that the owner of land bordering on the seashore holds only to ordinary high-water mark, and that all the seashore fronting his land lying between high and low water mark is the property of the state.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*R. M. Widney,* and *C. W. Pendleton,* for Appellant.

*Wells, Van Dyke & Lee,* for Respondents.

McKEE, J.—This was an action of forcible entry and detainer against the parties defendants, who were charged

with having forcibly entered upon about twenty feet square of the seashore of which, it was alleged, the plaintiff was in the exclusive possession at the time of the entry. The entry was made on the twenty-seventh day of July, 1885.

At the trial of the issues made by the pleadings in the case, the court granted a nonsuit, upon the ground that the evidence was insufficient to prove actual and peaceable possession by the plaintiff of the *locus in quo* at the time of the defendants' entry thereon. Whether the court erred in nonsuiting the plaintiff on that ground is therefore the only question presented on the appeal.

From the case as presented by the plaintiff, it appears that the land upon which the defendants entered is part of the seashore in front of a ranch in Los Angeles County known as the Cerritos ranch, which extends from the San Gabriel River on the west, along the beach of the Pacific Ocean for about two miles, to the boundary line of the Alamitos ranch. The plaintiff was in possession of that portion of the ranch lying immediately in front of the ocean, using the land as a "seaside resort," which, in the exercise of corporate powers derived from its articles of incorporation, it had established there two or three years before the entry complained of, and was known by the name of "Long Beach."

In establishing this seaside resort, the company had the portion of the ranch which fronted the ocean surveyed and laid off in streets and blocks for residence purposes and public parks, and a map of the survey made, on which the streets were marked and named, and the blocks for residence purposes subdivided into lots were delineated and numbered. As designated on the map, the streets laid off in the direction of the ocean were not projected to the beach; they ended in a street which was laid off parallel with the beach on the upland above the line of high tide, named on the map "Ocean

Park Avenue." South of the avenue the beach extends irregularly. In the narrowest place it is about three hundred feet to the line of low-water mark; but it gradually widens out until it is about eight hundred feet,— more than a hundred feet of which from low-tide to high-tide lines is covered by the ordinary tides.

On the upland, a considerable distance inland from the beach, the company had built, and at the time of the defendants' entry occupied, a "fine hotel," and on the beach below the upland a bath-house of sixteen rooms, near which were benches for the accommodation and use of patrons and visitors to the hotel; and in connection with this occupation it claimed, and in its corporate capacity exercised, the right to use and control the entire seashore frontage of the ranch for two miles—the tide-covered portion of—as a public bathing-place, and the portion uncovered by the tides as a driveway for carriages, which could be driven onto the beach from Ocean Park Avenue through two or three places in the bluff, which had been cut down to admit of their passage to and from the beach. It had also passed a resolution declaring "that all lands lying south of the south line of Ocean Park Avenue at Long Beach, to extreme low water of the Pacific Ocean, were reserved from sale and kept for the use of the company." In like manner it ordered its agent to prevent "campers" and other persons from taking possession of any part of the beach land by the erection of tents or bath-houses thereon, and to remove from it any such structures as might be put there by any person or persons for any purpose; and from time to time that had been done by the employees of the company.

This was the sum of the evidence given by the plaintiff as to its actual and peaceable possession of the beach at the time of the entry by the defendants.

The evidence was undoubtedly sufficient to prove such an exclusive possession of the ranch by the plaintiff as vested it with the right to maintain ejectment or forcible

entry against persons who may have invaded the possession. But there was no evidence tending to show that the ranch included the seashore in front. The plaintiff did not put in evidence the grant to the ranch; and in the absence of evidence to the contrary, the court below was bound, as this court is bound, to presume that the ranch went no farther seaward than ordinary high-water mark (*United States* v. *Pacheco*, 2 Wall. 587); and that all the seashore fronting the ranch lying between high and low water mark was the property of the state (Civ. Code, sec. 670), from whom, so far as appears by the evidence, the plaintiff did not claim to have derived any right of possession.

Such being the case, the plaintiff did not merely by its exclusive possession of the Cerritos ranch acquire possession of any lands outside of the ranch lines; and the evidence shows that it had no actual possession of the beach in front of the ranch, except that part of it which was occupied by its bath-house and improvements; but these were five hundred or six hundred feet away from that part of the beach upon which the defendants entered and put up their bath-house. Where the defendants entered, the plaintiff had no actual possession; their entry, although resisted by the servants of the plaintiff, was therefore not an invasion of the plaintiff's possession; and the plaintiff was not entitled to maintain the process of forcible entry or detainer against them. It follows that the plaintiff was properly nonsuited.

Judgment affirmed.

SHARPSTEIN, J., and THORNTON, J., concurred.

Hearing in Bank denied.