UNITED STATES of America, Plaintiff,

v.

GAS & OIL DEVELOPMENT CO., a corporation; Union Oil Company of California, a corporation; James E. Hill and Grays Harbor County; Tom Hawksworth, Los Nietos Company, a corporation; and all persons claiming an interest in real property herein described, Defendants,

State of Washington and Grays Harbor County; Louise Napoleon Johns, Harvey Johns, Emily Johns, Floyd Johns, Lavina (Laura Johns) McLeod, Flora Strom and Vance Johns (a minor), Additional Defendants.

Civ. A. No. 1529.

United States District Court
W. D. Washington, S. D.

June 29, 1954.

Charles P. Moriarty, U. S. Atty., and George E. Heidelbaugh, Asst. U. S. Atty., Seattle, Wash., for the United States and the Indian heirs.

Davidson & Nikoloric, Portland, Or., for Gas & Oil Development Co.

Kenneth Davis, Seattle, Wash., and John L. Miller, Elma, Wash., for Hawksworth and associates.

Selander, Espedal & Clark, Seattle, Wash., for Ocean City Oil Fields, Inc.

Little, LeSourd, Palmer & Scott, Seattle, Wash., for James E. Hill and Union Oil Co. of California and Los Nietos Co.

E. Albert Morrison, Asst. State Atty. Gen. for State of Washington, for the State of Washington.

Don G. Abel, Pros. Atty., for Grays Harbor County, Aberdeen, Wash., for Grays Harbor County.

Edward E. Merges, Seattle, Wash., guardian ad litem for Vance Johns, a minor.

R. H. Riddell, Seattle, Wash., receiver.

Kenneth Roegner, Tacoma, Wash., master.

BOLDT, District Judge.

The original complaint in this equity proceeding seeking to quiet title to property described in the complaint in the United States as trustee for certain Indian wards was filed November 29, 1951. Three amended complaints were filed, the third on April 24, 1952. Thereafter additional parties were brought in by answer and cross-complaint of defendant Gas & Oil Development Company. Motion of defendant State of Washington to dismiss the action as to the State for want of jurisdiction of the subject matter and of the State was served February 2, 1952 and filed May 22, 1952. By an order entered on June 3, 1952, on the application of Hawksworth and Gas & Oil Development Company, a receiver was appointed by the Honorable James M. Carter, then sitting in this Court by assignment. The receiver was directed by the order to assume control over the real property and improvements involved in the action for preservation during pendency of the litigation and to provide financing for continued oil exploration and production on said property subject to the order of the Court.

The transcript of the several hearings before Judge Carter prior to the appointment of the receiver indicates that although the State's motion to dismiss was called to the Court's attention no hearing thereon was had or requested and no objections were made to the appointment of the receiver. Thereafter Judge Carter heard various matters relating to the receivership, including a hearing in Los Angeles and authorization for a contract by the receiver with Ocean City Oil Fields, Inc. for extensive oil drilling operations, all without further objection to jurisdiction. The present judge first heard matters in this case on September 18, 1953 following the filing on September 12, 1953 of a stipulation and order transferring jurisdiction of the receivership and all matters incident thereto from Judge Carter to the present judge. The stipulation was signed by counsel representing all parties, including the State of Washington. At the commencement of the hearing on September 18, 1953, following examination of the voluminous files, the Court specifically enumerated all of the undetermined matters for consideration and determination of the Court at that date. Such enumeration did not include a challenge to the jurisdiction of the Court and such challenge was not mentioned in response to the Court's inquiry as to whether any matters had been overlooked or omitted in the enumeration.

At the September 18, 1953 hearing, forfeiture of a $25,000 cash performance bond deposited with the receiver pursuant to the Oil City Fields, Inc. contract was ordered at the instance of the adverse parties, including the State of Washington, and order to such effect was entered October 5, 1953. At the next hearing before the present judge on October 21, 1953 an enumeration of matters then to be heard did not include a challenge to jurisdiction and again the Court was not asked to consider such challenge.

On October 28, 1953 a hearing on the receiver's report was had, the report approved, and allowance of receiver's fee authorized without objection by the State of Washington. On February 1, 1954 a master was appointed to take evi-

dence and report as directed in the order, such order being drafted, approved and presented for entry by counsel for the State of Washington. The master's report was filed May 4, 1954; a supplemental report was filed June 16, 1954 correcting the original report in certain particulars and at the hearing on the State's objections to the report the master was directed to take evidence and report on additional facts; the report thereon was filed June 28, 1954. The cause came on for trial June 22 and 23 but no additional evidence was presented to the Court following the hearing on the master's report. With the corrections provided for in the master's supplemental report and the additional facts found by the master as directed, no objection by any party as to the facts found by the master remains to be determined. Accordingly, such facts are accepted and found by the Court and the master's report with respect to the following findings of facts is approved in entirety:

During his lifetime Samson Johns was an enrolled Indian of the Quinault Tribe and settled upon lots 3 and 4, Sec. 15, Township 18 North, Range 12, W.W.M., Grays Harbor County, State of Washington. He married about the year 1880, raised a family and continuously resided on the premises until his death in 1930. Since the date of his death his heirs, Louise Napoleon Johns, Harvey Johns, Emily Johns, Floyd Johns, Lavina McLeod, Flora Storm and Vance Johns, have been in possession of the lands. Samson Johns made final proof by affidavit dated August 11, 1899, and on September 7, 1900 the Secretary of the Interior issued a fee simple patent covering lots 3 and 4 pursuant to the provisions of the Act of May 20, 1862, and his patent was duly recorded in the General Land Office (Washington Vol. 131, p. 337). In the year 1916 the Secretary of the Interior cancelled the fee simple patent and issued to Samson Johns a trust patent in lieu thereof covering the same lands, the trust period to expire in the year 1966. The lands are bounded on the west by the Pacific Ocean, and since Samson Johns' occupation there

have been considerable accretions caused by the action of the ocean. Between the years 1858 to 1880, both dates inclusive, the accretions to lots 3 and 4 were approximately 50 acres, and during the years 1858 to 1900, both dates inclusive, the accretions to the lots were approximately 56 acres. The Gas & Oil Development Company and the Union Oil Company have drilled two oil wells on the accreted lands, known as State Oil Wells Nos. 3 and 4, under leases or permits from the State of Washington. Oil was discovered on the accreted lands.

Based on such facts the general issues of law for determination are: (1) whether this Court is without jurisdiction to hear the cause because the State has not consented to be sued and under the Federal Constitution only the United States Supreme Court has original jurisdiction where a state is a party and no substantial question arising under the constitution and laws of the United States is involved; (2) whether the United States has capacity to sue in this cause; and (3) what rule as to real property boundary under Washington State law is applicable to the facts in this case.

While no specific order or ruling on the State's motion to dismiss is found in the record, it appears by clearest implication that Judge Carter found and held that the controversy presented was within the jurisdiction of the Court and that the State of Washington consented to be and remain a party to the action. The appointment of a receiver and the several extended hearings incident thereto, all without objection by the State, are inconsistent with any other conclusion. Under the circumstances the present judge ought not to review such holding.

"* * * Upon the settled rule of 'stare decisis', in the absence of cogent reasons for departing therefrom, the prior ruling of this court controls the disposition of the motion here." U. S. v. Choy Kum, D. C.N.D.Cal.S.D.1950, 91 F.Supp. 769, 770.

"Judges of coordinate jurisdiction should not ordinarily overrule decisions of their associates based on the same set of facts, unless required by higher authority." U. S. v. Firman, D.C.W.D.Pa.1951, 98 F.Supp. 944, 946.

" * * * One judge will not review the rulings of another in the same court." Taylor v. Decatur Mineral & Land Co., C.C.N.D.Ala. N.D.1901, 112 F. 449.

By joining in and assenting to the appointment of a receiver and the extended hearings incident thereto and in the appointment of a master and the various matters relating thereto, the State became an active participant in the litigation and thereby consented to be sued in this action and submitted to jurisdiction of this Court.

■ The United States affirmatively pleaded and proved the regular issuance in 1900 of a fee title patent to the lots described in the complaint. Under such patent the land was not held in trusteeship by the plaintiff and without more the United States would have no capacity to sue and the State's motion for summary judgment on that ground would have to be sustained. The United States also pleaded and proved the administrative cancellation of the fee title patent and the issuance in 1916 of a trust patent. If the first patent was legally cancelled and the second be valid the United States does have capacity to sue. The State cites United States v. Stone, 2 Wall. 525, 17 L.Ed. 765, and many other United States Supreme Court decisions to the effect that a patent regularly issued and delivered by the United States, without defect on its face, cannot be affected by administrative action and can only be set aside by court decree in an appropriate proceeding. Plaintiff contends that the substitution of the second patent for the first is validated in law by the 1915 decree of this Court in U. S. v. Chehalis County, Cause No. 10–E of this District, and further because the substitution was voluntarily accepted and consented to by the patentee. The patentee was not a party to the Chehalis County case and there is no evidence sufficient to establish either that the patentee was in privity with any party in that case or that a legally valid voidance of the first patent and acceptance of the second was accomplished by affirmative action of the patentee. Neither ground urged in support of plaintiff's position can be sustained. Inasmuch as the defect in plaintiff's capacity to sue is shown by plaintiff's own pleading and proof, such defect is available to the State even though it does not have or claim any interest in the specific lots referred to in the complaint apart from the accretions thereto.

■ If desired, all of the issues in the present case, without question as to jurisdiction or capacity to sue, could be determined directly and expeditiously in an action by the individual Indian claimants brought in the State Superior Court as authorized by R.C.W. 4.92.010. If there be any question as to the decree entered by this Court being res judicata as to the invalidity of the purported patent substitution, the United States as trustee can join in the action under the Washington Rules of Procedure. In such an action, the state courts as final arbiters of state law can determine the applicable boundary rule, which, as hereinafter noted, has never been directly passed on by the Washington Supreme Court.

■ This Court's discussion of the applicable boundary line rule will be dictum in view of the conclusion reached as to the incapacity of plaintiff to maintain the action; accordingly, comment on such issue will be brief. In Ghione v. State, 1946, 26 Wash.2d 635, 175 P.2d 955, Hirt v. Entus, 1950, 37 Wash.2d 418, 224 P.2d 620, and Harris v. Swart Mortgage Co., 1952, 41 Wash.2d 354, 249 P.2d 403, the Washington Supreme Court unequivocally adopted the "moving boundary" rule as to lands in and adjoining navigable rivers. The same clause of Article XVII, Sec. 1 of the Washington Constitution reserves title in the State both to land on navigable rivers and to tide-

lands, and from that circumstance it might be inferred that the moving boundary rule would apply to tidelands as well as to river lands. However, the Ghione, Hirt and Harris cases were concerned solely with riverbed lands and the language of the decisions is strictly limited to such. Washington law, whether legislative enactment or court decision, is controlling as to either class of lands. It does not appear that any Washington legislation has ever been enacted directly or indirectly dealing with the boundary rule applicable to riverbed lands, whereas the contrary is true of tidelands. As far back as 1899, prior to the issuance of the first patent involved in this case, the Washington legislature unmistakably indicated its view that the moving boundary rule did not apply to tidelands. The Laws of 1899, Ch. 83, p. 132, the substance of which is now contained in R.C. W. 79.16.360, provides as follows:

> "All tide and shore lands except as herein expressly provided shall be sold upon the terms provided for the sale of school and granted lands, * * *. Provided, That any accretions that may be added to any tract or tracts of tide or shore lands heretofore sold or that may hereafter be sold by the state shall belong to the state, and shall not be sold or offered for sale until the said accretions shall have been first surveyed and platted under the direction of the commissioner of public lands, and the adjacent owner shall have the preference right to purchase said lands for thirty days after the same shall be offered for sale: Provided further, * * * [relating to appeals]."

Various other provisions of Washington legislation, including dedication of a portion of the accreted tidelands as a public highway, are to the same effect. Under the quoted Act a vast amount of Washington tidelands has been sold to private ownership; in fact the patentee in the present case entered into a contract, later defaulted, for the purchase of the very accreted lands now in dispute.

It is the opinion of this Court that when directly called upon to decide the question the Washington Supreme Court will not apply the rule of the Ghione, Hirt and Harris cases to accreted tidelands of the character of those involved in this case.

The remaining matters requiring disposition prior to entry of decree in accordance herewith are those relating to the tax liability of the receiver and disposition of the balance of funds held by him. For the protection of all concerned, entry of decree will await final determination of the matters referred to.