[No. 435-2.    Division Two.    April 10, 1972.]

ISLAH M. VAVREK, *Respondent*, v. WALTER T. PARKS *et al., Appellants.*

*Robert L. Beale* (of *Murray, Scott, McGavick, Graves, Lane & Lowry*), for appellants.

*B. Rolf Espedal,* for respondent.

PETRIE, C.J.—This is another case involving disputed ownership of accreted land along the Pacific Ocean. The particular dispute centers around the meaning of a 1952 deed in which the plaintiff granted certain premises to defendants' predecessors in interest. The description in the deed was:

> Beginning at the *Southwest corner of Government Lot 4,* Section 22, Township 18 North Range 12 West W.M.; thence Northerly on the *West line of said Government Lot 4,* 208 feet; thence North 89° 51′ East 208 feet; thence Southerly parallel to the West line of said Government Lot 4, 208 feet to the South Line of Government Lot 4; thence South 89° 51′ West on the South line of Government Lot 4, 208 feet to the place of beginning.

(Italics ours.)

Government Lot 4 in Section 22, Township 18 North, Range 12 West of the Willamette Meridian is a tract of land in Grays Harbor County, whose westerly border faces the Pacific Ocean. It was originally surveyed, established and

patented by the federal government prior to statehood.[1] For many years accretions have been building up westerly of the original boundary of this lot, to the extent that there are now an estimated 1,500 to 1,600 feet of accreted land lying between the 1859 meander line (traverse marking the sinuosities of the Pacific Ocean at the time of the original survey) and the present line of mean high tide at that location on the Pacific Ocean.

For several years prior to 1951, plaintiff, Islah M. Vavrek, had been the owner of all of government lot 4. In March, 1951, Mrs. Vavrek was approached by Frank and Anna Parks, husband and wife, with the request that she sell to them 1 acre of land "on the water" in Grays Harbor near Ocean City. Mrs. Vavrek advised the prospective purchasers that there was a dispute as to ownership in government lot 4 lying west of the meander line which, even at that time, consisted of a considerable amount of accreted land. She offered to sell to Mr. and Mrs. Parks 1 acre of land east of the meander line, the same being the property most westerly and southerly in said lot to which she could convey good and clear title.

Mrs. Vavrek and the Parks went to the ground where the 1-acre parcel was located and the prospective purchasers were shown a survey marker located on the south line of section 22 at the point where it intersected the meander line. She indicated that she would be willing to sell approximately 1 acre consisting of lands described by metes and bounds with the beginning point at the said marker, thence northerly along the meander line 208 feet, then generally easterly 208 feet, then generally southerly 208 feet, then westerly 208 feet to the point of beginning.

Upon the agreement of Mr. and Mrs. Parks to purchase said land, Mrs. Vavrek procured the survey of said property and all four corners were marked with stakes on said property. The parties entered into a contract for the pur-

---

[1]There is no formal proof in the record that the original patent was granted prior to statehood, but such fact is inherent in the contention of each of the parties hereto, and cannot be denied by either.

chase and sale of said property. Thereafter, both seller and purchasers, together with Walter T. Parks, defendant herein, the son of Frank and Anna Parks, went to the property where the said acre, as staked, was again pointed out to them. The southwest and southeast corner survey stakes were pointed out and although the purchasers thought they were getting waterfront property, the trial court found, but defendants assign error to the finding, that "they [defendants' predecessors] nevertheless accepted the acre as staked and accepted the plaintiff's [Mrs. Vavrek's] statement that the state of Washington contested the plaintiff's claim of title to the Westerly accretions." The purchasers paid the balance of the purchase price of $1,500 and on February 4, 1952 accepted the deed from Mrs. Vavrek with the description as set forth above.

Thereafter, Frank and Anna Parks conveyed the said property by the same description to the defendants herein, Walter T. Parks and wife, and H. Edward Sherman and wife. In recent years the defendants have begun using and occupying the land west of the meander line. The foregoing recitation of facts is a faithful recital of the findings made by the trial court. Except as noted later in this opinion, they are the essential facts.

Plaintiff commenced this action to quiet title in her to that strip of land 208 feet wide and approximately 1,500 feet long lying between the meander line and the line of mean high tide of the Pacific Ocean. Defendants have cross claimed seeking to quiet title in the disputed strip to themselves. Based on the foregoing facts, the court concluded that the defendants' predecessors in title "intended to limit the grant of the property to the lines described by metes and bounds using the meander line as the westerly line of the said tract"; and reformed the description in the deed[2] to read as follows:

Beginning at the *point where the Meander Line in Gov-*

---

[2]The only change was substitution of the italicized language in the reformation for the language "Southwest Corner of Government Lot 4" in the original deed.

*ernment Lot 4 intersects with the South line of* Section 22, Township 18 North Range 12 West W.M.; Thence Northerly on the West line of said Government Lot 4, 208 feet; Thence North 89° 51' East 208 feet; Thence Southerly parallel to the West line of said Government Lot 4, 208 feet to the South line of Government Lot 4; Thence South 89° 51' West on the South line of Government Lot 4, 208 feet to the place of beginning.

(Italics ours.) Thereafter the court entered a decree quieting title to the disputed strip in the plaintiff, Mrs. Vavrek. Defendants have appealed and have assigned error (1) to that portion of the finding of fact which declared that their predecessors in title "accepted the acre as staked", on the theory that there is no substantial evidence to support it; and (2) to the entry of the decree quieting title to the disputed strip in the plaintiff on the theory that as a matter of law title to the disputed strip passed to defendants' predecessors in 1952. Defendants have not challenged the reformed description of the 1952 deed, but they do contend that the reformed description also supports a conclusion of law that title to the contested strip of land be quieted in them.

■ We approach resolution of the issue presented by this appeal by first recognizing that the waterside boundaries of fractional governmental lots were determined by traverses laid out by the original surveyors who marked the major sinuosities of the body of water. These traverse lines are designated meander lines. They are fixed, determinable lines on the surface of the earth and, if lost, can be reestablished by any competent surveyor. Their primary role is somewhat historical, to ascertain the acreage enclosed in the original grant of land. They do not ordinarily designate the boundary of the land granted. Unless there is clear indication to the contrary, the watercourse itself constitutes the boundary of the upland tract. *Harris v. Swart Mortgage Co.,* 41 Wn.2d 354, 249 P.2d 403 (1952); 1 Patton on Land Titles, § 117 at 297 (2d ed. 1957).

■ Thus, the owner of these fractional lots has title to

the "water's edge"—in this instance to the line of mean high tide—and when accretion or reliction occurs, title to the affected land moves to the same extent as accretion or reliction takes place. *Smith Tug & Barge Co. v. Columbia-Pacific Towing Corp.,* 78 Wn.2d 975, 482 P.2d 769 (1971); *Harper v. Holston,* 119 Wash. 436, 205 P. 1062 (1922); J. Grimes, Clark on Surveying and Boundaries, § 238 *et seq.* (3d ed. 1959).

■ As a general rule, a deed conveying land, which employs a meander line (the waterside boundary of a government lot) as one of the calls in its description, will be construed against the grantor, and if he owns to the water, he will be deemed not to have cut off the grantee from the water. This rule is subject to the qualification that if the parties to the deed appear to have intended that the meander line should be the actual boundary, then such intention will be given effect. *Harris v. Swart Mortgage Co., supra.*

■ In the case at bar, the grant of the deed clearly described a 1-acre tract, 208 feet on each side, identifiable on the ground by any competent surveyor. The beginning point of that acre is the southwest corner of government lot 4, and the first call is along the west line of government lot 4. There is no problem in identifying the basic grant. The problem begins with exploration of what land, if any, is appurtenant to, and an incident of, that acre, belonging to it as a matter of right. One noted authority explains the problem as follows:

> Primarily, of course, descriptions embrace the land specifically described therein. However, with every transfer of land, title also passes, without specific description, or even mention, to all the appurtenances and incidents rightfully belonging to it, and which are essential to the full and perfect enjoyment of the property. *This may include,* not only buildings, fixtures, fences, timber, crops, etc., but also, unless reserved or previously conveyed, *such title as the previous owner had in land between a water boundary and its meander line,* the bed of private waters, *accretions and relictions*—in fact all title of the grantor to land beyond that specifically described

down to the water's edge or under the water, including *all riparian rights;* . . .

(Footnotes omitted. Italics ours.) 1 Patton on Land Titles, § 161 at 430 (2d ed. 1957).

■ There is no express reservation in the 1952 deed of the land, which had already accreted by 1952, lying westerly of the 1 acre conveyed. Mrs. Vavrek, the grantor, contends however, that no express reservation is necessary because in the instant case the meander lines were intended as the *actual* boundaries. If this be so, parol evidence to ascertain the real intent of the parties *is* necessary, not to contradict the deed, but to ascertain to what property the particulars of description contained in it apply. *Hirt v. Entus,* 37 Wn.2d 418, 224 P.2d 620 (1950); *Newman v. Buzard,* 24 Wash. 225, 64 P. 139 (1901).

The real controversy presented by this appeal revolves around the standard of proof and the nature of evidence permissible to ascertain the real intent of the parties when meander lines are used in the descriptive portion of a deed. Defendants contend that before meander lines can be considered to be the actual boundaries of the land conveyed, evidence thereof must be clear. We agree. *Harris v. Swart Mortgage Co., supra; Hirt v. Entus, supra.*

■ Defendants also contend that evidence of the real intent of the parties must be found in the deed itself. With this, we disagree. Defendants do not direct our attention to any Washington authority for this contention, nor do we find any. Indeed, as we have already seen, when the ambiguity arises outside the deed, parol evidence is always admissible to resolve the ambiguity, albeit not for the purpose of contradicting the deed. *Hirt v. Entus, supra.* However, defendants' contention does force us to examine the precise function of the court in resolving that ambiguity. The duty of the court is to ascertain not what the parties may have secretly intended, as contradistinguished from what their words express, but rather what is the meaning of the words used. The court's duty is twofold: interpretation and construction; *i.e.,* first, to find the true sense of the written

words as the parties used them, as evidenced by (1) the facts and circumstances at the time of the transaction and (2) by the practical construction given by the parties while in interest with respect to the ambiguity; and secondly, after the true sense is ascertained, to subject the instrument, in its operation, to established rules of law. *Newman v. Buzard, supra; King County v. Hanson Inv. Co.,* 34 Wn.2d 112, 208 P.2d 113 (1949).

This brings us finally to consideration of the defendants' assignment of error challenging the italicized portion of finding of fact 3 reading as follows:

> That there is no dispute that the Southwest and Southeast corner survey stakes were pointed out, and although the purchasers thought they were getting waterfront property, *they nevertheless accepted the acre as staked and accepted the plaintiff's statement that the state of Washington contested the plaintiff's claim of title to the westerly accretions.*

(Italics ours.)

More significantly perhaps, is the defendants' challenge to the trial court's decree as not being supported by either the challenged or the admitted facts, and particularly that there is no support for the trial court's conclusion of law 2 as follows:

> That the *predecessors in title of the defendants* herein accepted the approximately one acre of property described above and *intended to limit the grant of the property to the* lines described by metes and bounds using the *meander line as the Westerly line of the said tract.*

(Italics ours.)

It seems to us that the one truly significant circumstance, which existed at the time of the transaction and which continued to color the practical construction by the parties in interest, is the fact that until comparatively recent date the state of Washingon asserted an ownership interest in all the land lying west of the meander line. That fact continued uninterruptedly until the United States Supreme Court handed down its decision definitively and effectively

terminating that assertion in *Hughes v. Washington,* 389 U.S. 290, 19 L. Ed. 2d 530, 88 S. Ct. 438 (1967). As a result of the state's continued assertion of title to land lying west of the meander line, the Grays Harbor County assessor made no attempt to assess taxes on that property against the owners of the record title up to the meander line. However, commencing in 1959, as a result of a local decision in Superior Court for Grays Harbor County, the assessor did assess taxes against such owners to land lying west of the meander line up to the "line of vegetation", which thereafter became known as the "upland boundary line". Commencing in 1959 and continuously thereafter defendants were assessed, accepted the same, and paid taxes on the basis of, the original 1 acre plus the strip between the meander line and the line of vegetation. Commencing in 1959 and continuously thereafter Mrs. Vavrek—who continued in ownership of government lot 4 except that which she had deeded to defendants' predecessors—was assessed, accepted the same, and paid taxes on the basis of, the remainder of lot 4 plus the strip between the meander line and the line of vegetation *except* for that part of the strip lying west of the defendants' 1 acre. This is rather clear objective evidence of the practical construction placed upon the effect of the 1952 deed by the parties in interest.

When we examine the record to ascertain whether or not there is substantial evidence to support any "finding" that the parties to the 1952 deed intended the meander line to be the *actual* boundary, or that they placed such a practical construction upon the ambiguity in the deed, we find no clear indication to that effect. There is, therefore, no substantial evidence to support an intention that the deed was limited to the 1 acre alone or that there was an implied reservation in the deed preserving to the grantor the land already accreted westerly of the meander line. We must conclude, therefore, that the real intent of the parties was to employ the meander line (west line of government lot 4) in its normally accepted usage, as intending to convey title to the line of ordinary high tide of the Pacific Ocean.

Judgment reversed, with instruction to enter a decree quieting title to the disputed strip of land lying westerly of the meander line in defendants.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied May 1, 1972.

Review denied by Supreme Court July 21, 1972.