[No. 11539. Department One. July 22, 1914.]

WILLIAM W. WARDELL, *Respondent*, v. COMMERCIAL WATERWAY DISTRICT NO. 1, OF KING COUNTY, et al., *Appellants*.[1]

NAVIGABLE WATERS—LANDS UNDER WATER — CONVEYANCES — CONSTRUCTION. After the title to the bed of a tidal stream has passed from the state into private ownership, a conveyance by an upland proprietor, describing the land as bounded by such stream, and making no reservation of the portion covered by water, passes title to the grantor's interests as far as the grantor owns under the waters of such stream.

VENDOR AND PURCHASER—BONA FIDE PURCHASER—RIGHTS. The rights of a subsequent purchaser deraigning title from a prior grantor and claiming under intermediate conveyances are measured by the language used in the deeds, and not controlled by facts and circumstances surrounding the conveyance passing from such prior grantor to his grantees.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 23, 1913, upon findings in favor of the plaintiff, in an action to quiet title. Reversed.

*Shorett, McLaren & Shorett, Peters & Powell,* and *Saundders & Nelson,* for appellants.

*John G. Barnes,* for respondent.

MAIN, J.—The purpose of this action was to quiet the title to two small tracts of land lying above and along the west meander line of the Duwamish river. The defendant Commercial Waterway District No. 1 claims to be the owner of these lands, deraigning title from the plaintiff. August Sandgren and wife and Anna Matson became parties to the

[1]Reported in 141 Pac. 1045.

action by intervention.   The lands in controversy are a part of lot 7, in sec. 19, twp. 24 N., R. 4 E. W. M., in King county, Washington.

The meander line on the west side of the Duwamish river constitutes the east boundary of lot 7.   In front of a portion of lot 7, the meander line as established by the United States government surveyors is below the line of ordinary high tide.

On February 27, 1882, the plaintiff, Wardell, acquired title to all of lot 7.   On February 11, 1896, Wardell sold and conveyed to one Matson a portion of the lot consisting of ten acres, more or less, described by metes and bounds.   The call in this deed for the south boundary of the tract extended "to the Duwamish river, thence north 0 degrees, 58 minutes east, 730 chains, along said river."   On October 20, 1896, Wardell conveyed to August Sandgren a portion of lot 7, containing five acres, more or less, and describing the portion sold by metes and bounds.   The call for the south boundary in this deed extends "to the Duwamish river, thence north 0 degrees, 45 minutes east 3.79 chains."   During the year 1912, the waterway district received conveyances from Anna Matson, for herself and as administratrix of the estate of her deceased husband, and Sandgren and wife, for certain portions of the east side of the 10 and 5 acre tracts.   Within these conveyances, was included the land lying below the line of ordinary high tide and above the meander line.   The controversy is over the title to that strip of land or "water gore" lying above the meander line and below the line of ordinary high tide.   This strip of land varied in width from 35 to 45 feet and amounted to a little less than three-fourths of an acre.   When the Sandgren and Matson deeds were executed, the plaintiff's title extended to the meander line.   The plaintiff claims that his deed to Sandgren and Matson conveyed only to the line of ordinary high tide.   The Waterway District contends that those deeds conveyed title to the meander line, since Wardell's ownership extended that far into the

river.   The cause was tried to the court without a jury. Judgment was entered quieting the title in the plaintiff to the strip of land in controversy.   From this judgment, the appeal is prosecuted.

The respondent opens his brief with a number of motions, calling in question the sufficiency of certain of the steps taken by the appellants in the prosecution of their appeal. Without reviewing these motions in detail, it may be said that an attentive consideration of them leads to the conclusion that each is without substantial merit.

Upon the merits, the principal question is the construction of the language, "to the Duwamish river," as used in the deeds of Wardell to Sandgren and Matson.   Does this language fix the east boundary line of the tracts conveyed at the line of ordinary high tide, or that point in the river to which Wardell's title extended?

Two general propositions of law seem to be recognized by both the appellants and the respondent.   One is, that when a private individual grants property belonging to him and bounds it generally by a natural stream, the presumption is that he does not intend to reserve any land between the upland and the stream, and the grant will carry the title to the grantee so far as the grantor owns, unless the shore land or bed of the stream be expressly reserved from the grant.   The other is, that in those jurisdictions where the beds of navigable and tidal streams are in the state and not in the adjacent land proprietors, a conveyance of land fronting upon such streams, made by private owners while the title to the shore land or bed of the stream remains in the state, are not presumed to extend beyond the line of the private ownership.

The respondent claims that, since by, article 17, § 1 of the constitution, the state "asserts its ownership to the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide in waters where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all navigable rivers and

lakes," the present case falls within the rule stated where the title to the shore land or bed of a stream is in the state, and that the presumption is that "to the Duwamish river," means only to the line of ordinary high tide. The appellants contend that this rule does not operate when the title to the shore land or the bed of a stream has passed out of the state and into private ownership.

The respondent cites and quotes an excerpt from a note prepared by Mr. Freeman in *Allen v. Weber*, 27 Am. St. 56, as sustaining his position. This note, however, when read in its entirety, states a doctrine contrary to that contended for by the respondent. After stating the general rule, that where the title to beds of navigable or tidal streams is in the state or sovereign and not in the adjacent land proprietors, a conveyance of land fronting upon such stream is presumed not to be intended to extend beyond the line of private ownership, which is generally at ordinary high water mark, it is said:

"When, however, it clearly appears that the bed of a navigable or tidal stream is not vested in the state or sovereign, but in some private proprietor, the presumptions ordinarily attending conveyances ceases to operate, and their place is taken by a contrary presumption, which is, that the grantor did not intend to reserve to himself the flats nor the land covered by water lying between the bank and the thread of the stream, and to thus shut off his grantee from ownership in the land underlying the water. In the multitude of decisions, it would, perhaps, be extreme to say that none can be found in conflict with the rule which we have stated, but our industry has not enabled us to discover any in conflict with it. On the contrary, in every instance in which we have seen the question decided, where it appeared that the grantor owned any part of the bed of the stream, whether navigable or tidal, or not, his conveyance has been held to extend to the thread of the stream, when he owned so far, and in other cases up to the line of his ownership, when it did not extend so far into the stream as its thread, unless it contained some words clearly reserving from the operation of his deed the land so owned by him. [Citing authorities]."

After the title to shore land or the bed of a stream has passed from the state into private ownership, there seems to be no reason why a conveyance by an upland proprietor of land, describing it as bounded by a certain stream, in the absence of a reservation, should not convey all the land which such proprietor owns, even to the thread of the stream, if he should own so far. In *Freeman v. Bellegarde*, 108 Cal. 179, 41 Pac. 289, 49 Am. St. 76, it is said:

"A private grant is to be interpreted in favor of the grantee, and, if the grantor is the owner of the monument or boundary designated in his grant, his conveyance will be held to extend to the middle line or central point of such monument or boundary. This rule is not changed by reason of the fact that a stream which is designated as the boundary is a tidal stream, if the grantor of the land is the owner of the bed of such stream. 'When riparian estates are conveyed the owner may reserve the land under water, but the general presumption is that the purchaser's title extends as far as the grantor owns, in both tidal and fresh waters.' (Gould, Waters, sec. 195.) The title to the beds of tidal streams is ordinarily vested in the sovereign, and in such case a grant from the sovereign which is bounded by tidal waters will be construed to extend only to high-water mark. (*Long Beach Land etc. Co. v. Richardson,* 70 Cal. 206.) A grant from the sovereign is to be interpreted in favor of the grantor, contrary to the rule for interpreting grants between private individuals; but if, as in the present case, the sovereign has parted with the title to the land beneath the stream, a grant of the riparian tidal lands by the owner must receive the same construction as a grant by him of any other riparian lands."

What is meant by the call in the deeds "to the Duwamish river" seems to be substantially determined in the case of *Maynard v. Puget Sound Nat. Bank*, 24 Wash. 455, 64 Pac. 754. It was there held, that the words "to Duwamish Bay" are equivalent to the words, "Beginning at the sea;" and citing the case of *Snow v. Mt. Desert Island Real Estate Co.*, 84 Me. 14, 24 Atl. 429, 30 Am. St. 331, 17 L. R. A. 280, where the words "Beginning at the sea" were held to include shore land extending to low water mark.

The respondent, however, argues, that the facts and cir-
cumstances surrounding the sale and conveyance from War-
dell to Sandgren and Matson show an intention to pass title
only to the line of ordinary high tide. Whether these facts
and circumstances, as shown by the record, are sufficient to
overcome the presumption which attaches to the language of
the conveyance as between the original parties, need not now
be inquired into, and no opinion thereon will be expressed.
The rights of the waterway district, deraigning its title from
Wardell; and claiming under conveyances from Sandgren and
Matson, would be measured by the language used in the deeds,
and not by the surrounding facts and circumstances. The
evidence is insufficient to charge the waterway district with
knowledge of anything dehors the deeds.

The judgment will be reversed, and the cause remanded
with direction to the superior court to dismiss the action.

CROW, C. J., ELLIS, CHADWICK, and GOSE, JJ., concur.