[No. 32041. Department One. October 23, 1952.]

FRED G. HARRIS et al., *Appellants*, v. SWART MORTGAGE COMPANY et al., *Defendants*, HOWARD BOOTH et al., *Interveners and Respondents*.[1]

[1]Reported in 249 P. (2d) 403.

*James Leavy*, for appellants.

*Horrigan, Merrick, Peterson & Merrick*, for respondents.

DONWORTH, J.—This is a contest between two claimants to a strip of land in section 18, township 9 north, range 29 E. W. M., situated in Franklin county. All of the strip lies in government lot 3 of section 18 except a small corner which is in government lot 2.

The land is vacant, unimproved and unfenced and has never been occupied. It lies lengthwise along the left bank of the Columbia river, which flows southeast; it is roughly rectangular in shape, approximately 1400 feet long by 200 feet wide. It is bounded on the northeast by a county road and on the southwest by the high water line of the river. The tract comprises some six or seven acres and is indicated by the shaded area in the sketch on the following page.

The pleadings in the case and the evidence presented at the trial are difficult to follow. It will suffice for the purposes of this opinion to state that title to a tract lying immediately northwest of the land in controversy has been quieted in the Franklin county irrigation district and is not involved in this appeal. An order of default was entered against the defendants Swart Mortgage Company and Franklin county. The only issue raised by the interveners' complaint was as to ownership of the tract in dispute.

The cause was tried to the court sitting without a jury. At the conclusion of the trial and argument the court evidently rendered an oral decision (which has not been made a part of the record) in favor of plaintiffs. Thereafter interveners filed a motion for judgment notwithstanding the oral decision, or, in the alternative, for a new trial. The

court granted the first alternative motion and subsequently entered findings of fact, conclusions of law and a decree quieting interveners' title to the tract. Plaintiffs have appealed from this decree.

The factual background is revealed by a number of deeds. In 1905, the United States patented to Timmerman lots 1, 2 and 3 in section 18. Prior to 1919, Timmerman conveyed parts of lots 1 and 2 by two separate deeds which are not here involved. In 1919, Timmerman conveyed to Scott certain land lying in lots 2 and 3 (hereinafter called the uplands) by a description reading as follows:

"Beginning at the intersection of the north and south center line of said section eighteen (18) and the meander line of the left bank of Columbia River as the same is established by the U. S. Land Office plat, thence following said meander line North forty (40) degrees west, nine hundred ninety (990) feet; thence continuing in said meander line North Fifty-five (55) degrees West, four hundred eighty-five (485) feet to a point in the public highway and in the East and West line forming the south boundary of H. V. Wexler's property; thence east five hudred eleven (511) feet to the southeasterly corner of the said H. V. Wexler property; thence North nine (9) degrees thirty (30) minutes West eleven hundred sixteen (1116) feet following the easterly boundary of the said Wexler property to a point in the east and west center line of the quarter section; thence seven hudred eighty (780) feet east to a point in the north and south center line of said section eighteen (18) at the one-sixteenth section corner; thence south along siad centter line twenty one hundred twelve (2112) feet to the point of beginning; containing in all an area of twenty nine (29) acres more or less. . . ."

The point of beginning as given in the foregoing deed lies somewhere in the east line of lot 3. There are no monuments marking the meander line or its intersection with the north and south center line of the section. The most cogent evidence in the record which tends to establish the location of the meander line and the point of beginning is in the deed itself.

According to the deed, the southwest boundary of the irregularly shaped tract conveyed to Scott follows the mean-

der line, and if the point of beginning be located by reference to the only definitely located point (the northeast corner of lot 2), the southwest boundary of the tract is at all points more than two hundred feet from the high water line of the river. The meander line, as so located, roughly parallels the river and appears to lie within, or but a few feet northeast of, the county road which forms the northeast boundary of the land in dispute. In other words, the tract in dispute is essentially that strip of land lying between the meander line as set forth in the first two calls of the Timmerman-Scott deed and the high water line of the river.

After having acquired the uplands from Timmerman, Scott purchased from the state of Washington the second class shorelands described as situated "in front of, adjacent to or abutting upon" the uplands. In 1920, Scott conveyed the uplands to Brown by a deed which contained the same description as that in the Timmerman-Scott deed. The Scott-Brown deed, however, added the words "including shorelands."

In 1924, Timmerman conveyed to Patterson his remaining holdings in lots 1, 2 and 3 (hereinafter called the residue). Timmerman accomplished this by conveying "that portion of Lots one (1), two (2) and three (3) . . . not included in" three certain deeds recorded in Franklin county. Two of the excepted deeds are those heretofore mentioned as not being involved in this controversy. The third deed excepted was *not* Timmerman's deed to Scott, *but was* Scott's deed to Brown, which employed the same description but, in addition, included the shorelands.

Brown subsequently failed to pay the taxes levied upon his land and, in 1936, Franklin county foreclosed by a shortened and changed description which read as follows:

"Begin at SE corner lot 3, thence N. 40 degrees W. 990 ft, N. 55 degrees W. 485 ft E. 511 ft. N. 9 degrees 30′ W. 1121.7 ft to N. line of lot 2, E 780 ft to NE corner lot 2, S. 2112 ft to beginning less R/W, being parts of lots 2 and 3 . . . ."

In 1940, Franklin county foreclosed against the residue of lots 1, 2 and 3, then owned by defendant Swart Mortgage

Company, Patterson's successor in interest. The residue was described in the foreclosure proceedings simply as "Tax 3."

In 1941, Franklin county conveyed to respondent wife the uplands by the same shortened and changed description which the county had employed in the 1936 foreclosure proceeding.

In 1943, Franklin county conveyed the residue to appellant husband by a deed reading:

"Tax tract No. 3. More particularly described: All Government lots 1, 2 and 3 . . . excepting therefrom that portion included in those certain deeds [the same three deeds excepted in the Timmerman-Patterson deed]. . . ."

In 1946, Brown executed a quitclaim deed to respondent wife, which used the same description employed in the Timmerman-Scott deed, and included, also, the shorelands.

Appellants have assigned error to the admission of certain testimony and an exhibit. They have also assigned error to the trial court's findings that respondents were the owners of the disputed tract and that appellants had no interest therein.

In our view of the case, it is not necessary to discuss these assignments of error. The various deeds which have been described were all admitted without objection and it is our opinion that, based upon the information therein contained, respondents were entitled, as a matter of law, to have title to the disputed tract quieted in them.

Appellants argue that only the county's deed to respondent wife should be considered in determining ownership of the tract. They urge that her deed is ambiguous in that the description therein fails to close, unless the northeast corner of lot 2 (the only point definitely located) be taken as the point of beginning. If the description in the deed be thus made to close, they point out, the land in dispute is not encompassed within its metes and bounds. They maintain that they acquired title to the land in dispute by virtue of their residue deed from the county.

As we view the case, however, it is necessary that the extent of the land conveyed by Timmerman to Scott in

1919 be determined. It is obvious that, by its deed to respondent wife, the county intended to, and did, convey to her whatever land it had taken by foreclosure from Brown. We need not determine whether the description employed in that foreclosure proceeding was sufficiently definite to apprise Brown of what land was being foreclosed. Respondent wife has, in any event, secured from Brown a quitclaim deed, and now owns, either through the county's deed or Brown's quitclaim deed, whatever land Brown owned prior to the foreclosure proceeding. Brown, in 1920, had acquired whatever land Scott owned.

There is thus presented but one question: Did the deed from Timmerman to Scott convey only the land inclosed within its metes and bounds description, or, did it, by reason of its reference to the meander line of the river, carry with it a grant of that strip, which Timmerman also owned, lying between the meander line and the river?

The Columbia river is a navigable river. *Great Northern R. Co. v. Washington Electric Co.*, 197 Wash. 627, 86 P. (2d) 208.

By virtue of his patent granted by the United States after statehood, Timmerman acquired ownership of all of government lots 1, 2 and 3 to the line of ordinary high water. *Washougal & La Camas Transp. Co. v. Dalles, Portland & Astoria Nav. Co.*, 27 Wash. 490, 68 Pac. 74; *Harper v. Holston*, 119 Wash. 436, 205 Pac. 1062.

Scott, by purchasing the shorelands, acquired that land lying between the line of ordinary high water and the line of navigability. *State v. Sturtevant*, 76 Wash. 158, 135 Pac. 1035.

In determining whether the Timmerman-Scott deed should be construed as conveying the land to the high water line, there are established principles to be considered.

Meander lines are run by government surveyors along the banks of a navigable stream to mark the sinuosities of the stream and for the purpose of determining the areas of fractional subdivisions of the public lands bordering thereon. *Washougal & La Camas Transp. Co. v. Dalles, Portland & Astoria Nav. Co.; supra.*

■ They are not intended as boundaries of the upland tracts, and the watercourse itself, unless there is a clear indication to the contrary, forms the boundary. *Harper v. Holston, supra; Hirt v. Entus,* 37 Wn. (2d) 418, 224 P. (2d) 620; *Sizor v. City of Logansport,* 151 Ind. 626, 50 N. E. 377; *Tucker v. Mortenson,* 126 Minn. 214, 148 N. W. 60; Patton on Titles 247, § 66.

In the *Sizor* case, *supra,* the Indiana court said:

"It is clear from the authorities that the meander line was run by the government surveyors as near the waterline as possible, and was intended to mark the waterline, and the same is shown on the official plats prepared from the field notes to be the water or border line of the stream. We think, therefore, that in all conveyances where the meander line is mentioned, it must be held to be the actual waterline, unless the contrary clearly appears from the deed itself."

■ It may be stated as a general rule that a deed conveying land by a description which employs a meander line as a boundary will be construed against the grantor, and, if he owns to the water, he will be deemed not to have intended to cut off his grantee from the water. The rule, of course, is subject to the qualification that if the parties to the deed appear to have intended that the meander line should be the actual boundary, then such intention will be given effect. 11 C. J. S., Boundaries, 572, § 30; 8 Am. Jur., Boundaries, 767, § 31; 6 Thompson on Real Property (Perm. ed.) 671, § 3443.

Appellants concede the general rule but maintain that the reference in the Timmerman-Scott deed to the meander line "as the same is established by the U. S. Land Office plat" is conclusive evidence that the meander line was intended as the actual boundary of the tract. They rely upon *Polson v. Aberdeen,* 44 Wash. 155, 87 Pac. 73 and *Spinning v. Pugh,* 65 Wash. 490, 118 Pac. 635, which involved platted lands within a municipality. In both of those cases, however, the actual boundaries of the plats and lots within the plats were staked out on the ground. No mention of a meander line or river was made in any deed; the sole reference

was to the plat wherein the boundaries of the lots were definitely set forth. The cases are not in point.

We readily concede that the reference in the Timmerman-Scott deed to the meander line as established by the U. S. Land Office plat is indicative of an intention that the meander line should be the actual boundary. Another indication is the failure of Timmerman to except from the grant the county road, which lies largely southwest of the meander line.

■ Despite these indications of an intention that the meander line should be the actual boundary, we believe that convincing evidence is furnished by the Timmerman-Patterson residue deed that Timmerman intended that his grant to Scott should extend to the high water line of the river.

From the residue which he granted to Patterson in 1924, Timmerman excepted not his own deed to Scott, but Scott's deed to Brown. Included within Scott's deed to Brown were the shorelands. It is only reasonable to conclude that, by specifically excepting Scott's grant of the uplands *and shorelands* from his own conveyance of the residue, Timmerman recognized and confirmed that he had parted with title to the land lying between the uplands and shorelands. Appellants presented no evidence at the trial, other than the deeds herein referred to, which indicated any intention by Timmerman that the meander line should be the actual boundary of his grant to Scott.

There being no clear indication to the contrary, the grant from Timmerman to Scott must be held to have conveyed not only the specific uplands therein described but, also, the land lying below the meander line. Respondents, whose title to the disputed tract is measured by Scott's title thereto, are, therefore, entitled to a decree quieting their title as against appellants.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.