Hillsborough,
No. 6015.

FRANK SHELDON
PATRICIA SHELDON

*v.*

LEO SEVIGNY
TOWN OF PELHAM *& a.*

October 30, 1970.

*Shaw & Eldredge* ( *Mr. Robert Shaw* orally ), for plaintiffs.

*Winer, Lynch & Pillsbury* ( *Mr. Robert W. Pillsbury* orally ), for defendant Leo Sevigny.

*Hamblett, Kerrigan, LaTourette & Lopez* for defendant town of Pelham, filed no brief.

GRIFFITH, J. Plaintiffs' bill in equity alleged that the defendant Sevigny had violated the town of Pelham zoning ordinance and had located his septic tank within the bounds of the plaintiffs' property. The boundary line between plaintiffs' lot and defendant's lot was in dispute and it was agreed between counsel that this line would have to be determined before further proceedings on the original bill in equity, and apparently might be determinative of plaintiffs' claims in the original action. By agreement of counsel Hamilton Associates were retained to determine the line. The line established by their survey was not satisfactory to the plaintiffs and the matter was referred to a Master ( *Frank B. Clancy,* Esq. ) for hearing.

Plaintiffs presented as their sole witness plaintiff Frank Sheldon and the defendant introduced the testimony of James E.

Roantree from Hamilton Associates. The decision of the master was favorable to the defendant and was approved by the Trial Court ( *Flynn,* J. ) as to the location of the boundary line. Plaintiffs' exceptions were reserved and transferred. It was agreed that the sole issue in the case was the boundary line between the lots and that the only defendant concerned with this issue was Leo Sevigny.

The plaintiffs and the defendant acquired their lots from common grantors and the plaintiffs' deeds predated those of the defendant. Defendant's lot is in the name of Sev-A-Tel Builders, Inc., a corporation owned principally by Sevigny, who is considered the owner of the lot for the purposes of this case.

In 1963 Joseph A. Clark subdivided a tract of land he owned at the southwesterly corner of Windham Road and Simpson Road in Pelham. Ned Spaulding, a surveyor, prepared a plan dividing the tract into seven lots including lot 4, now owned by the plaintiffs, and lot 3 now owned by the defendant. Spaulding and J. Albert Lynch acquired a portion of the tract including lots 3 and 4 on December 19, 1963. On November 30, 1964 and December 1, 1964 plaintiffs purchased lot 4 from Lynch and the administratrix of the deceased Ned Spaulding's estate. Lot 3 was conveyed to the defendant on March 25, 1965 and March 31, 1965 by the same sources.

The plan prepared by Spaulding was an exhibit, together with an overlay correcting certain courses and distances in the original plan. The only other exhibits in the case were the deeds to the plaintiffs and defendant, and several copies of the plan prepared by Hamilton Associates.

The lots in question lie side by side on the southeasterly side of a natural monument, Beaver Brook, and are both bounded on the southeasterly side largely by Hemlock Drive. The course of the disputed boundary line between lots 3 and 4 running from Beaver Brook to Hemlock Drive is stated as N 70° W in the plaintiffs' deeds and in the converse as S 70° E in the defendant's deeds. Plaintiffs challenge the Hamilton surveyor's conclusion that this course was stated in the deeds and on the Spaulding plans incorrectly.

The only monument mentioned in the deeds, other than Beaver Brook at the rear, and Hemlock Drive at the front, is an iron pipe three feet short of the brook in the southwesterly sideline of lot #3, opposite the disputed sideline. The Spaulding Plan shows the rear line of lot #3 to be 130 feet more or less, mea-

sured along by the brook. The defendant's deeds describe the disputed line by course and distance "by said lot #4 to the . . . right of way." (Hemlock Drive). The plaintiffs' deeds describe the same line by the same course and distance "along said lot #3 to the point of beginning," which is the southwest corner of lot #4 "at the northwest corner of lot #3."

Thus by reference to the only marker mentioned in any of the deeds, and to the measurement shown by the Spaulding Plan, Hamilton Associates determined the southwest corner of lot #4 to be 130 feet from the undisputed sideline of lot #3, marked by the iron pipe.

James E. Roantree, the Hamilton surveyor, testified in effect that if he followed the distances and courses given in plaintiffs' deeds he would reduce the distance called for in defendant's deed approximately fifty feet on the brook and doing the same with the defendant's deeds reduced the distance called for in the plaintiffs' deeds on Hemlock Drive by fifty feet. He testified that he found iron pins commonly used in surveys along the southwest line of lot 3 including the one referred to in the deeds three feet from Beaver Brook and within a foot or two of the distances given in the deeds on Beaver Brook for both lots 3 and 4. He also found on Hemlock Drive, within a foot or two of the location called for by distances in the deeds, iron pins at the northeast corner of lot 4 at lot 5, the latter lot being the next northeasterly of lot 4. He did not locate any pin at the point between lots 4 and 3 on Hemlock Drive. But by measuring from the iron pin the distance called for in the deeds to lot 4 he located the boundary corner of the two lots on Hemlock Drive. Since adoption of a common boundary line between the points so determined agreed with the distances called for in the deeds for both lots and with the quantities shown on the Spaulding plans for both lots, he concluded the true course of the boundary line was S 65° 17' 30" E. This testimony was accepted by the master and the trial court as a basis for a decree establishing the boundary line between lots 4 and 3.

The plaintiffs argue that because there were no monuments called for in the deeds to establish the corners, the course of S 70° E must control over all other factors in the establishment of the line. While generally in the absence of monuments course will control distance if they are inconsistent (12 Am. Jur. 2d Boundaries s. 65, at 603 (1964); 11 C.J.S. Boundaries s. 47, at 596 (1938)) this is not the rule when the call for a course

appears in error and conflicts with all the other calls in the deeds and the evidence on the ground. *Id.* The trial court here was entitled to accept the testimony of the surveyor that the course was incorrect and to determine from all the evidence in the case the correct location of the boundary line. *Coburn* v. *Coxeter,* 51 N.H. 158, 163 ( 1871 ); *Andrews* v. *Todd,* 50 N.H. 565 ( 1871 ).

The evidence relating to the iron pins not shown on the plans was properly considered as evidence of the original survey ( *Barron* v. *Cobleigh,* 11 N.H. 557 ( 1841 ) ) and together with the other factors in evidence enabled the court to establish the boundary line to most nearly conform to the calls in the deeds. This was a determination of fact by the trial court and as it is supported by the evidence it must stand. *Rautenberg* v. *Munnis,* 108 N.H. 20, 226 A.2d 770 ( 1967 ); *Goodwin* v. *Johnson,* 105 N.H. 294, 199 A.2d 97 ( 1964 ).

Plaintiffs argue that the effect of the decree is to create a dispute with the owner of lot 5, who is not a party to this action, as to the boundary line between lots 4 and 5. They argue that the location of the boundary line between lots 4 and 3 will not leave sufficient land for the remaining lots without changing the line between lots 4 and 5. If this were true it would be a strong argument that the surveyor's location of the line between lots 4 and 3 was incorrect. No such evidence was offered in the case and the only evidence was the statement of the surveyor that the corrected course took no land from any lot and that he had found an iron pin apparently establishing the line between lots 4 and 5. It follows that plaintiffs' claim is without support from the evidence in the case.

Plaintiffs' final argument rests upon the fact that both deeds describe the line by Beaver Brook as running by the bank of the brook. They argue that the surveyor's measurements from the brook to Hemlock Drive were from the thread of the brook and should have been from the bank. How much of a factor this was in either the surveyor's opinion or the master's decision does not appear. In any event the fact that a deed runs by the bank of a stream does not limit the conveyance to the bank in the absence of clear expression of an intent to so limit the grant. " An intent that the soil in the river and street shall be owned by a person who does not own the abutting land is so improbable that it would require an express exception in the grant, or some clear and unequivocal declaration, or certain

and immemorial usage, to limit the title of the grantee to the edge of the street and the edge of the river. " *Smith* v. *Furbish,* 68 N.H. 123, 126, 44 A. 398, 399 ( 1894 ); *Luneau* v. *Mac-Donald,* 103 N.H. 273, 276, 173 A.2d 44, 46 ( 1961 ); Annot., 49 A.L.R.2d 982, *s.* 17, at 1023 ( 1956 ).

*Plaintiffs' exceptions overruled; remanded.*

All concurred.