[No. 905-2. Division Two. December 27, 1973.]

ANNA KNUTSON, *Respondent*, v. JOHN W. REICHEL *et al.*, *Defendants*, BEULAH REICHEL *et al.*, *Appellants.*

*Francis J. Walker*, for appellants.

*Don W. Taylor* and *Fristoe, Taylor & Schultz, Ltd., P.S.*, for respondent.

RYAN, J.*—This case involves a dispute over the ownership of certain lands lying between the bank and thread (center) of a nonnavigable river. In summary, the facts are as follows:

Plaintiff Anna Knutson's mother died in 1944. Included in her estate was a large tract of land situated in Thurston County. This property was divided by the Deschutes river. As part of the settlement of the estate, a portion of the property was conveyed to the plaintiff by the remaining heirs (her brothers and sisters). This parcel was described as follows:

> That part of the northeast quarter of the northwest quarter of Section 34, Township 16 North, Range 2 East, beginning at the southwest corner of said northeast quarter of the northwest quarter of said Section 34, run-

---

*Judge Frank Ryan is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

ning thence due North 20 rods, thence due east 48 rods, thence North to the county road, *thence following the south or west line of said county road to the DesChutes River; thence following along the North bank of the DesChutes River* to its intersection with the North and South line between the East half and the West half of the northwest quarter of said section; thence North along said line to the point of beginning, containing 18½ acres, more or less.

(Italics ours.)

In connection with this distribution the plaintiff conveyed to the other heirs her interest in the balance of the property. In 1969, plaintiff filed an action to reform the deed and quiet title in her to the land lying between the north bank and the thread of the river, alleging that due to a mutual mistake the parties to the original deed inserted "thence . . . along the North bank of the DesChutes River" when they intended the thread of the river to constitute the boundary.

The trial court characterized the italicized portion of the deed as ambiguous and admitted testimony from two of the surviving heirs that the center of the stream had been intended as the boundary of the parcel. Based in part upon this testimony, the trial court reformed the portion of the deed in controversy to read:

thence following the south or west line of said county road to the DesChutes River; *thence following along the thread of the DesChutes River* to its intersection with the North and South line . . .

(Italics ours.)

A decree was accordingly entered quieting title to the disputed strip in plaintiff. Appeal was taken from that decree by the widow and heirs of Melvin Reichel (a brother of the plaintiff and one of the original heirs, who ultimately acquired ownership of the balance of the original tract). For the reasons hereinafter set forth, we affirm.

We approach resolution of the central issue of this appeal by taking note of the rules of construction which apply

generally to grants bounded upon bodies of water, and upon nonnavigable streams in particular.[1]

■ Generally, a call in a deed to a nonnavigable river means to the center (thread) of the stream. *State ex rel. Davis v. Superior Court,* 84 Wash. 252, 146 P. 609 (1915). There exists, moreover, a presumption that when a private individual grants property belonging to him and bounds it generally upon a natural stream, he does not intend to reserve any land between the upland and the stream, and the grant will carry title to the grantee so far as the grantor owns unless the shoreland or bed of the stream be *expressly reserved* from the grant. *Wardell v. Commercial Waterway Dist. 1,* 80 Wash. 495, 141 P. 1045 (1914).

Furthermore, as to a deed which employs a call to a river, though the thread of the river is not specifically described as a boundary, it can be said in light of the above presumption that the shorelands and bed are appurtenant to the basic grant. One authority has expressed this concept as follows:

> Primarily, of course, descriptions embrace the land specifically described therein. However, with every transfer of land, title also passes, without specific description, or even mention, to all the appurtenances and incidents rightfully belonging to it, and which are essential to the full and perfect enjoyment of the property. This may include, not only buildings, fixtures, fences, timber, crops, etc., but also, *unless reserved or previously conveyed,* such *title as the previous owner had in* land between a water boundary and its meander line, *the bed of private waters,* accretions and relictions—*in fact all title of the grantor to land beyond that specifically described down to the water's edge or under the water, including all riparian rights;* . . .

---

[1] It is implicit in the position of the parties that the Deschutes River is nonnavigable. While the record discloses that shingle bolts have on occasion been floated on the river, this does not render it navigable in the general commercial sense. *State ex rel. Davis v. Superior Court,* 84 Wash. 252, 146 P. 609 (1915). Where a nonnavigable stream divides two tracts of land, the boundary is ordinarily the center of the main current, or as it is generally referred to, the "thread" of the stream. J. Grimes, *Clark on Surveying and Boundaries* § 612 (3d ed. 1959).

(Footnotes omitted. Italics ours.) 1 R. Patton, C. Patton *Land Titles* § 161 (2d ed. 1957).

In our opinion, the cumulative effect of these principles is this: a deed which employs a river as one of the calls in its description will be construed against the grantor, and if he owns to the water he will be deemed not to have cut off the grantee from the water, absent an express reservation.[2]

There is clearly no express reservation of the shorelands or bed of the river in the deed in this case. In applying this rule of construction we must accordingly conclude that the grant passes title to the thread of the stream.[3]

Appellants contend that no express reservation is required, and direct our attention to the case of *Commissioners Comm'l Waterway Dist. 2 v. Seattle Factory Sites Co.*, 76 Wash. 181, 194, 135 P. 1042 (1913), in support of that proposition. It was said in that case:

> It may be conceded that a description in a conveyance which bounds the land conveyed by a stream, if unnavigable, will be construed as meaning the thread of the stream, but where the description is specific in its language, naming the bank of the stream as the boundary of the land conveyed, we think the decided weight of authority is to the effect that the grantee's rights will not extend beyond such specified boundary so as to give him any right in the bed of the stream.

Aside from the fact that that case antedates *Wardell v. Commercial Waterway, supra,* we do not think it applies to the facts of the instant case. In the cited case the property at issue contained this description:

> extending northward *to the south bank* of Cedar river, thence following the south bank of the Cedar river and the east bank of the Black river, . . .

---

[2] A similar rule has been applied in several Washington cases with respect to deeds which employ meander lines as calls. *Vavrek v. Parks,* 6 Wn. App. 684, 495 P.2d 1051 (1972) (ocean); *Harris v. Swart Mortgage Co.,* 41 Wn.2d 354, 249 P.2d 403 (1952) (navigable river); *Hirt v. Entus,* 37 Wn.2d 418, 224 P.2d 620 (1950) (nonnavigable river).

[3] This, we believe, is the general result where deeds employing calls to a nonnavigable river are construed. *See* cases collected in J. Grimes, *Clark on Surveying and Boundaries* at § 612 (3d ed. 1959).

(Italics ours.) *Commissioners Comm'l Waterway Dist. 2 v. Seattle Factory Sites, Co., supra* at 194.

It was thus clear in that case that the grant extended only *to the bank* of the river, and not, as here, to the river itself. In view of the general principles set out above, this distinction is crucial. *See State ex rel. Davis v. Superior Court,* 84 Wash. 252, 258, 146 P. 609 (1915).[4]

■ This rule of construction defeats appellants' contentions. We point out that parol evidence would be admissible to support appellants' argument that the parties intended the *bank* of the Deschutes river as the actual boundary— such evidence always being admissible, not to contradict the deed, but to ascertain to what property the particulars of the description apply. *Vavrek v. Parks,* 6 Wn. App. 684, 690, 495 P.2d 1051 (1972). In light of the presumption that the grantor intended the river to be the boundary, where the deed includes a call to the river, before the bank thereof can be considered to be the actual boundary, evidence thereof must be clear. *Cf. Vavrek v. Parks, supra; Harris v. Swart Mortgage Co.,* 41 Wn.2d 354, 249 P.2d 403 (1952). In this case, the parol evidence admitted comported with the presumption that the grant extended to the thread of the stream.

While the trial court considered the problem as one of ambiguity warranting reformation of the deed, and we have viewed it as one of construction, the result is the same. Accordingly, the judgment and decree quieting title to the land between the north bank and thread of the Deschutes river is affirmed.

ARMSTRONG, A.C.J., and PETRIE, J., concur.

Petition for rehearing denied January 31, 1974.

Review denied by Supreme Court March 5, 1974.

---

[4]In this connection, appellants contend that, as a river has many constituent parts, one of which is a bank (*See Alabama v. Georgia,* 64 U.S. 505, 16 L. Ed. 556 (1860)), the call to the river in this case may, in light of the next call, be construed to be a call *to the bank. State ex rel. Davis v. Superior Court,* 84 Wash. 252, 258, 146 P. 609 (1915), however, carefully distinguishes between calls to a *natural boundary,* such as a river, and calls to the *bank* of a river.