[No. 9837-3-I.   Division One.   January 10, 1983.]

HARVEY BERNHARD, ET AL, *Appellants,* v. ROBERT E. REISCHMAN, ET AL, *Respondents,* TRANSAMERICA TITLE INSURANCE COMPANY, *Appellant.*

*Andrew Nielsen, R. Michael Kight,* and *James Irwin,* for appellants.

*James Twisselman* and *Raymond Davis,* for respondents.

SCHOLFIELD, J.—Plaintiffs Harvey and Lillian Bernhard (Bernhard) appeal entry of summary judgment in favor of Robert E. and Audrey J. Reischman (Reischman) in a quiet title action. Safeco Title Insurance Company (Safeco), Bernhard's title insurer, appeals entry of summary judgment in favor of Bernhard for attorney's fees and costs. Transamerica Title Insurance Company (Transamerica) appeals entry of summary judgment in favor of Reischman for attorney's fees and costs. Reischman and Bernhard cross–appeal provisions of the judgments entered against

their respective title insurers. We affirm the judgment in favor of Reischman in the quiet title action. We reverse the judgments against Safeco and Transamerica.

In 1903, John Ness acquired property located on the South Slough of the Stillaguamish River in Snohomish County. Its northern boundary was the thread of the non-navigable South Slough. Ness subsequently divided this property into three sections. He sold the west section in 1910. In 1911, Ness and his wife entered into a real estate contract to sell the east section of the property to Robert Forbes. The contract described the property as follows:

> The East Thirty eight (38) acres of the West half (½) of North East quarter (¼) of Section Eleven (11) of Township 31, N.R.4 E.W.M. (The northerly boundary being the South bank of South Slough) also the 2.52 acres more or less more particularly described in deed from Sather to Ness recorded in Vol.99, Deeds . . .

In 1914, Ness, on his own behalf and as guardian of his minor children who were the heirs of his now deceased wife, executed a warranty deed to Forbes, describing the property as follows:

> From the South one–sixteenth corner of the NE¼ of Section 11 Township Thirty–one (31) North Range 4 East W.M., run north 1013 feet; thence North 31 degrees 0′ East 235.5 feet; *thence N.2 deg. 16′ East 710 feet to South slough,* thence N.88 deg. 20′ West 344.8 ft. Thence S. 88 deg. 12′ West 206.5 ft. thence South 51 deg. 24′ West 174 feet, thence S.22 deg. 57′ West 200 feet.; thence South 10 deg. 10′ West 555 ft. thence South 60 deg. 54′ W.301.4 ft[.], thence S.83 deg.33′ West 113 ft., *thence leaving the bank of the said South slough* run 50 deg. 49′ West 938.3 ft. to the East and West quarter line of said Section 11, thence along the quarter line N.89 deg. 33′ East 1102.9 feet to the point of beginning, containing 41.12 acres more or less.

(Italics ours.) A 1919 quiet title action against Ness individually and as guardian of his minor children divested the named defendants of all interest in the east section.

This property, which was the subject of the Ness–Forbes deed, passed by mesne conveyances to Reischman. One of

the deeds in Reischman's chain of title altered the description to state a call "to the south line of South Slough; thence along said slough line", followed by courses and distances, "thence leaving said slough line", followed by further courses and distances. Reischman's title insurance policy described the property in identical terms.

The middle section of property retained by Ness passed by mesne conveyances to Bernhard. The deed to the Bernhards described the property as including the

> portion of West half of the Northeast quarter lying South of South Slough.
>
> . . .
>
> EXCEPT Tract extending into the West half of the Northeast quarter as follows:
> Beginning at the Southeast corner of the Southwest quarter of the Northeast quarter; thence North 1013 feet; thence North 31° East 235.5 feet; thence North 2°16′ East 710 feet to South Slough; thence North 88°20′ West 344.8 feet; thence South 88°12′ West 206.5 feet; thence South 51°24′ West 174 feet; thence South 22°57′ West 200 feet; thence South 10°10′ West 555 feet; thence South 60°54′ West 301.4 feet; thence South 83°33′ West 113 feet; thence leaving bank of said Slough, South 0°49′ West 938.3 feet to East and West quarter line; thence along quarter line North 89°33′ East 1102.9 feet to point of beginning, all in Section 11, . . .

The legal description of the excepted tract is identical in all material respects to the property description in the Ness–Forbes deed.

There was evidence that after 1914, the South Slough shifted northward and that the resulting accretions enlarged the tracts once owned by Ness. Today, the western boundary of the Forbes–Reischman tract, as measured by the courses and distances stated in the 1914 deed, begins more than 300 feet south of the bank of the South Slough. The litigation concerns property bounded on the north by the thread of the South Slough lying north and west of the property described in the Ness–Forbes deed, as shown below.

In 1978, Bernhard sued Reischman to quiet title to the disputed property. Bernhard claimed title to this land on the theory that it did not fall within the metes and bounds description of the property Ness sold to Forbes and therefore was not excepted from his deed. When Safeco, Bernhard's title insurer, refused tender of the action, Bernhard sued Safeco. Reischman counterclaimed against Bernhard by filing a quiet title action as to the same property. Reischman's title insurer, Transamerica, refused a tender of defense and intervened to obtain a declaratory judgment

that it had no duty to defend the suit against Reischman. Reischman counterclaimed against Transamerica.

The trial judge applied the rule of construction that a call to a nonnavigable stream means to the center (thread) of the stream. *State ex rel. Davis v. Superior Court,* 84 Wash. 252, 146 P. 609 (1915); *Knutson v. Reichel,* 10 Wn. App. 293, 518 P.2d 233 (1973). Accordingly, he granted Reischman's motion for summary judgment and denied Bernhard's motion for summary judgment. The trial judge thereafter ruled that Transamerica and Safeco had breached their duties to defend their insureds and granted summary judgments in favor of Reischman against Transamerica and in favor of Bernhard against Safeco.

Bernhard contends that no rule of construction can be applied because the courses and distances set forth in the Ness–Forbes deed are unambiguous. Relying upon *Commissioners Comm'l Waterway Dist. 2 v. Seattle Factory Sites Co.,* 76 Wash. 181, 135 P. 1042 (1913), Bernhard also contends that the 1914 deed was a grant bounded by the bank of a nonnavigable stream which conveyed only to the specified boundary and not to the thread of the stream. We do not agree with either contention.

The facts in *Knutson v. Reichel* closely resemble the facts here. The deed there contained the following pertinent call:

> [T]hence following the south or west line of said county road to the DesChutes River; thence following along the North bank of the DesChutes River to its intersection with the North and South line . . .

(Italics omitted.) *Knutson v. Reichel, supra* at 294. The Ness–Forbes deed likewise contains an initial call *to* a nonnavigable stream ("to South slough") and a call leaving the *bank* of that nonnavigable stream ("thence leaving the bank of the said South slough"). The Ness–Forbes deed differs from the deed construed in *Knutson v. Reichel* only in its inclusion of specific courses and distances between the initial and terminating water–related calls.

A description in a conveyance which specifically

names the bank of a nonnavigable stream or river as the boundary grants only to that bank. *Commissioners Comm'l Waterway Dist. 2 v. Seattle Factory Sites Co., supra.* But

> Generally, a call in a deed to a nonnavigable river means to the center (thread) of the stream. *State ex rel. Davis v. Superior Court,* 84 Wash. 252, 146 P. 609 (1915). There exists, moreover, a presumption that when a private individual grants property belonging to him and bounds it generally upon a natural stream, he does not intend to reserve any land between the upland and the stream, and the grant will carry title to the grantee so far as the grantor owns unless the shoreland or bed of the stream be *expressly reserved* from the grant. *Wardell v. Commercial Waterway Dist. 1,* 80 Wash. 495, 141 P. 1045 (1914).

*Knutson v. Reichel, supra* at 295. This presumption rests upon the improbability of a grantor's intent to retain a stream bed while conveying the abutting property. *Sheldon v. Sevigny,* 110 N.H. 419, 272 A.2d 134 (1970). Thus, a grantor's intent to make such a reservation must be clearly indicated by the language of the grant. *Wardell v. Commercial Waterway Dist. 1,* 80 Wash. 495, 141 P. 1045 (1914); *Knutson v. Reichel, supra.* Moreover, the presumption of a grant to the thread of a stream established by an initial call to the stream applies notwithstanding a terminating call which refers to the bank of that stream. *See Knutson v. Reichel, supra.*

By deeding property whose boundary ran "North 2°16' East 710 feet to South Slough", Ness is presumed to have conveyed all of his property in the South Slough—that is, to the *thread. Wardell v. Commercial Waterway Dist. 1, supra; Knutson v. Reichel, supra.* Consequently, this is not a case where the initial water–related call runs to the bank of a stream. *Cf. Commissioners Comm'l Waterway Dist. 2 v. Seattle Factory Sites Co., supra* at 194. Because the succeeding courses and distances in the Ness–Forbes deed terminate in a water–related call, they appear to represent only the sinuosities of the South Slough circa 1914. These courses and distances and the call "leaving the bank of the

said South slough" are insufficient to overcome the presumption that Ness intended to convey to the thread of the South Slough. *See Wardell v. Commercial Waterway Dist. 1, supra; Knutson v. Reichel, supra.*

Bernhard argues that the Ness–Forbes deed, read in light of the prior real estate contract, establishes that Ness did not intend to convey to the thread of the South Slough. We do not agree.

The contract does refer to the "northerly boundary" of the parcel "being the South bank of South Slough". We observe, however, that Ness did not own the entire west half of the northeast quarter of Section 11. Consequently, some language was necessary to more specifically identify the situs of the tract. If language of a conveyance is intended to describe the location of property with reference to a river or stream rather than to set a boundary, the grant is a conveyance beyond the bank. 12 Am. Jur. 2d *Boundaries* § 26 (1964). It is sufficient to say that the 1911 contract does not clearly evidence the sellers' intent to convey only to the bank nor does it clearly reserve their rights to the Slough bed.[1]

Bernhard also contends the trial judge erred in admitting certain affidavits as to the location of the boundary. Inasmuch as the trial judge stated he did not rely upon these affidavits in making his decision, and they are not necessary to sustain the decision, the error, if any, in their admission was harmless.

We conclude that the Ness–Forbes deed conveyed property to the thread of the South Slough. Consequently, the trial judge's conclusion that Reischman owned the disputed parcel was correct.

Safeco, on its cross appeal, contends the trial judge erred in concluding Safeco breached its duty to defend Bernhard

---

[1]Even if Ness conveyed slightly more land by deed in 1914 than the 1911 contract provided for, the subsequent quiet title action brought by Forbes finally determined all interests which the named defendants and their successors in interest could claim in the property conveyed by the Ness–Forbes deed. *Grove v. Payne,* 47 Wn.2d 461, 288 P.2d 242 (1955).

in the quiet title action. We agree.

The title insurance policy issued by Safeco to Bernhard includes a prominently identified "DESCRIPTION OF THE REAL ESTATE WITH RESPECT TO WHICH THIS POLICY IS ISSUED". The land to which coverage was extended was "[a]ll that portion of the East half of the Northwest quarter of Section 11, Township 31 North, Range 4 East, W.M.," as more fully described in the policy, "EXCEPT Tract, extending into the West half of the Northeast quarter", as described in language identical to that used in the Ness–Forbes deed. This exception is clearly identified in large type.

If parties to an insurance contract use words having a specific legal meaning, they will be presumed to have intended that those words be construed in accordance with established rules of law. *R.A. Hanson Co. v. Aetna Ins. Co.,* 26 Wn. App. 290, 612 P.2d 456 (1980); 1 G. Couch, *Insurance* § 15:20 (2d ed. 1959). The language employed in the Ness–Forbes deed and in the exception to coverage provision of Safeco's policy carries a specific legal meaning; as we have stated, it means that the disputed parcel is owned by Reischman. Thus, the property is excluded from Bernhard's title insurance policy. Safeco's duty was to defend only suits concerning the insured property. It breached no duty to defend in connection with litigation over the disputed parcel. Thus, entry of the summary judgment in favor of Bernhard was error.

Transamerica's appeal also alleges error in the trial judge's conclusion that Transamerica breached its duty to defend its insured. Transamerica relies upon two clearly identified exceptions to coverage which are stated in Reischman's policy.

A typed exception excludes coverage for "[a]ny question that may arise due to the shifting or change in course of the South Slough and unnamed creek, or due to said stream having shifted or changed its course". This provision is, however, ambiguous.

The "shifting slough" exception may be read to except from the scope of its exception all liability arising

from the *past* shifting of the South Slough because the second clause of the exception applies to the past shifting of a "said stream", while the first clause may refer only to a future shifting of the two named waterways and must be so read if the second clause is to be other than mere surplusage. Consequently, the exception would apply here only if the "said stream" of the second clause refers back to the "South Slough" rather than to the "unnamed creek".[2] We discern no basis for so concluding. The language of the exception, being ambiguous, must be construed against the insurer and in favor of the insured. *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 631 P.2d 947 (1981).

Another printed exception excluded coverage for "[e]ncroachments or questions of location, boundary and area, which an accurate survey may disclose". Such terms are inserted when no survey is made prior to issuance of a title policy. For an additional premium, a survey will be made and a policy issued to cover off–record defects discoverable by survey. *Contini v. Western Title Ins. Co.*, 40 Cal. App. 3d 536, 115 Cal. Rptr. 257 (1974). Such additional coverage was available to but not elected by Reischman.

█ The litigation presents a question of boundary or area. The metes and bounds description in the Ness–Forbes deed includes a call "leaving the bank of the said South slough". Because of accretions since 1914, this point is now some 300 feet south of the bank of the South Slough. An accurate survey would have disclosed the substantial discrepancy between the courses and distances in the deed and the calls referenced to the South Slough.

Reischman contends, however, that the question here is the construction of a deed as a prerequisite to determining where the boundary established by that deed is located, and thus a question of boundary or area is not involved. We

---

[2] The "unnamed creek" forms an eastern boundary of Reischman's property. Consequently, the references to the "unnamed creek" cannot be treated as irrelevant to analysis of the "shifting slough" exception.

do not agree.

By construing the Ness–Forbes deed, the trial judge declared what the deed meant in 1914 and has meant since that time. The exact location of the parties' boundary has not been held in abeyance for some 60 years. A survey consistent with the deed would have established that a question of boundary or area existed. Reischman chose not to purchase coverage for such questions. Under the clear language of the "accurate survey" exception, there was no coverage for this dispute. *See Muench v. Oxley,* 90 Wn.2d 637, 584 P.2d 939 (1978). Transamerica had no duty to defend Reischman.

The judgment in favor of Reischman in the quiet title action is affirmed. The judgments against Safeco and Transamerica are reversed. The cross appeals of Bernhard and Reischman from the judgments against Safeco and Transamerica, respectively, are dismissed.

CALLOW and RINGOLD, JJ., concur.

Reconsideration denied April 19, 1983.

Review denied by Supreme Court May 24, 1983.