IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| DEREK WATSON and MEGAN WATSON, husband and wife, | ) ) ) | No. 82233-1-I |
| Appellants, | ) ) | |
| v. | ) ) | |
| OLD REPUBLIC NATIONAL TITLE COMPANY, a national title insurance company, | ) ) ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | |

VERELLEN, J. — In 2015, Derek and Megan Watson obtained a survey revealing that a structure on their neighbors' property encroached onto their property. After their neighbors sued them to quiet title, the Watsons tendered defense to their title insurance carrier, Old Republic National Title Company. Old Republic declined to defend, the Watsons sued Old Republic, and the trial court granted Old Republic's motion for summary judgment.

We conclude Old Republic properly declined to defend under the title policy's "survey exception," which provides: "This policy does not insure against loss or damage, and [Old Republic] will not pay costs, attorneys' fees, or expenses that arise by reason of . . . [e]ncroachments, or questions of location, boundary and/or area which an accurate survey may disclose."[1] Accordingly, we affirm the

_____

[1] Clerk's Papers (CP) at 202.

trial court's summary dismissal of the Watsons' claims against Old Republic.

FACTS

The Watsons and their neighbors, the Chungs, own adjoining waterfront properties in Stanwood. The Chung property abuts the Watson property to the north, and both properties are bounded to the west by Port Susan and to the east by Marine Drive. The Watsons and the Chungs both purchased their properties from Terje and Ingunn Leiren. Before the Leirens sold the properties, they constructed a funicular (a tracked elevator that pulls a car up and down by a cable) to provide beach access from the upper, eastern part of what later became the Chung property.

When they purchased their property, the Watsons obtained a title insurance policy from Old Republic. The policy provides, in relevant part:

> SUBJECT TO . . . THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, [Old Republic] insures . . . against loss or damage . . . sustained or incurred by the Insured by reason of:
> . . . .
>
> 2.   Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from:
>    . . . .
>
>    (c)   Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining

land.[2]

Schedule B to the policy contains a so-called "survey exception," which provides: "This policy does not insure against loss or damage, and [Old Republic] will not pay costs, attorneys' fees, or expenses that arise by reason of . . . [e]ncroachments, or questions of location, boundary and/or area which an accurate survey may disclose."[3,4]

It is undisputed that the Watsons did not conduct a survey of their property before they purchased it from the Leirens.[5]  In October 2015, the Watsons obtained a survey from Mead Gilman & Associates.  The Mead Gilman survey revealed that the landing for the funicular serving the Chung property encroached onto the Watson property.

In February 2016, the Chungs sued the Watsons to quiet title to the landing under the common grantor doctrine.[6]  The Watsons tendered defense of the

---

[2] CP at 199 (emphasis added).

[3] CP at 202 (emphasis added).

[4] By way of background, the survey exception in Schedule B is inserted "when no survey is made prior to issuance of a title policy."  Bernhard v. Reischman, 33 Wn. App. 569, 578, 658 P.2d 2 (1983).  "For an additional premium, a survey will be made and a policy issued to cover off-record defects discoverable by survey."  Id.

[5] See Report of Proceedings (Nov. 30, 2020) at 36.

[6] Cases applying the common grantor doctrine hold that "where an agreed boundary was established between a common grantor and the original grantee, and a structure has been erected to mark that boundary that is sufficient to indicate to subsequent purchasers that its purpose is to demarcate the boundary line, that boundary is binding on subsequent grantees."  Levien v. Fiala, 79 Wn. App. 294, 301, 902 P.2d 170 (1995).

lawsuit to Old Republic. Old Republic declined to defend the Watsons.

On July 29, 2020, the Watsons filed this lawsuit. They alleged that Old Republic breached its contract with them by declining to defend them. Old Republic moved for summary judgment, arguing that it properly relied on the survey exception in declining to defend the Watsons.

In their opposition to Old Republic's motion for summary judgment, the Watsons pointed out that while the policy's "covered risks" provision stated that Old Republic would insure against losses resulting from defects "that would be disclosed" by an accurate survey, the survey exception stated that there was no coverage for defects that "an accurate survey may disclose."[7] The Watsons asserted that, as used in the policy, "the word 'would' occupies definitional space that the word 'may' does not,"[8] or, at the very least, the policy was ambiguous.

The trial court granted Old Republic's motion for summary judgment and dismissed the Watsons' claims.[9] The Watsons appeal.

ANALYSIS

The Watsons argue that the trial court erred by summarily dismissing their claims against Old Republic. We disagree.

We review summary judgment orders de novo, engaging in the same

---

[7] CP at 86-87, 199, 202 (emphasis added).

[8] CP at 86.

[9] The dismissal included Consumer Protection Act claims not at issue in this appeal.

inquiry as the trial court.[10]  It is undisputed that the outcome of this appeal turns entirely on interpretation of the Old Republic title policy and, specifically, whether the survey exception clearly eliminates coverage for losses arising from the Watsons' underlying dispute with the Chungs.[11]  This dispositive issue is also subject to de novo review.[12]

"In interpreting an insurance contract, we look to the intent of the parties, which is ascertained from the language of the contract."[13]  "Language in an insurance contract is to be given its ordinary meaning, and courts should read the policy as the average person purchasing insurance would."[14]  "If policy language is clear and unambiguous, the court may not modify the contract or create an ambiguity."[15]  "If an ambiguity exists, then the court may attempt to determine the parties' intent by examining extrinsic evidence."[16]  "If a policy remains ambiguous even after resort to extrinsic evidence then [we] will apply the rule that ambiguities

---

[10] Beaupre v. Pierce County, 161 Wn.2d 568, 571, 166 P.3d 712 (2007).

[11] See Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wn.2d 751, 760, 58 P.3d 276 (2002) (insurer is relieved of its duty to defend "if the alleged claim is clearly not covered by the policy").

[12] See Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 52, 164 P.3d 454 (2007) ("Interpretation of an insurance contract is a question of law reviewed de novo.").

[13] Campbell v. Ticor Title Ins. Co., 166 Wn.2d 466, 472, 209 P.3d 859 (2009).

[14] Id.

[15] Am. Star Ins. Co. v. Grice, 121 Wn.2d 869, 874, 854 P.2d 622 (1993).

[16] Id.

in insurance contracts are construed against the insurer."[17] "An ambiguity exists if the language is fairly susceptible to two different reasonable interpretations."[18]

Here, the Mead Gilman survey disclosed the funicular landing encroachment and resulting boundary question, and the Watsons do not dispute that survey's accuracy. In other words, the underlying dispute with the Chungs involved an "[e]ncroachment, or question[ ] of . . . boundary . . . which an accurate survey may disclose."[19] Thus, coverage for the dispute was clearly eliminated by the survey exception.[20] Summary judgment was proper.

The Watsons focus on the wording of the "covered risks" provision for encroachments that "would be disclosed" by an accurate and complete survey and the survey exception's exclusion for encroachments "which an accurate survey may disclose." They assert that in the context of the policy, "the word 'would' occupies definitional space that the word 'may' does not"[21] and that the policy is, at the very least, ambiguous as to the meaning of these words.[22] Thus, they contend, "[s]ummary judgment was improper in this case because the 'may'

---

[17] Id. at 874-75.

[18] Id. at 874.

[19] CP at 202.

[20] Cf. Muench v. Oxley, 90 Wn.2d 637, 647-48, 584 P.2d 939 (1978) (survey exception using identical language unambiguously precluded coverage for boundary dispute revealed by surveyor's testimony), overruled on other grounds by Chaplin v. Sanders, 100 Wn.2d 853, 676 P.2d 431 (1984).

[21] App. Br. at 16, 23.

[22] Id. at 18.

exception does not entirely exclude coverage under the 'would' provision."[23]  But this contention is unpersuasive because something that would be disclosed by an accurate survey is, necessarily, something that "may" be disclosed by an accurate survey.[24]  The Watsons' interpretation of "would" and "may" to be mutually exclusive—or to mean that "would" is broader than "may"—is not reasonable.

The Watsons next argue that the survey exception must be read in a way that "gives effect to both the covered risk[s provision] and the accurate survey exception."[25]  They assert that "[i]f the covered risk is <u>entirely</u> exempted under the language in the 'may' provision, there is no reason for the 'would' coverage to exist in the contract in the first place."[26]  But this contention ignores the policy language making the covered risks provision expressly "subject to" the survey exception. Under the plain language of the policy, the covered risks provision need be given effect only to the extent coverage is not eliminated by the survey exception.[27] And, as discussed, the survey exception completely eliminates any coverage here. The Watsons contend that an insurer cannot use a "subject to" clause to completely eliminate a category of coverage, but they cite no authority to support

---

[23] <u>Id.</u> at 30.

[24] <u>See</u> WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1396 (1993) ("may" means "be in some degree likely to").

[25] App. Br. at 23.

[26] <u>Id.</u> at 24.

[27] <u>Cf.</u> <u>Kalles v. State Farm Mut. Auto. Ins. Co.</u>, 7 Wn. App. 2d 330, 333-34, 433 P.3d 523 (2019) (when interpreting insurance policies, courts will "harmonize <u>clauses that seem to conflict</u> in order to give effect to all the contract's provisions" (emphasis added)).

this contention.  Thus, we reject it.[28]

In short, the survey exception plainly provides that there is no coverage for losses arising from the Watsons' underlying dispute with the Chungs because an accurate survey may and did disclose that encroachment.  The survey exception clearly applies, there is no ambiguity, and the Watsons' sole argument in support of reversal fails.  The trial court did not err by summarily dismissing the Watsons' claims against Old Republic.

We affirm.

_____

WE CONCUR:

_____       _____

---

[28] See RAP 10.3(a)(6) (requiring arguments to be supported by legal authority); DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").